33 N.J. Super. 101 (1954)
109 A.2d 485
MONROE GUNTHER AND MADELINE GUNTHER, PLAINTIFFS,
v.
METROPOLITAN CASUALTY INSURANCE COMPANY, A CORPORATION OF NEW YORK, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided November 5, 1954.
*102 Mr. Harold D. Feuerstein, attorney for plaintiffs.
Messrs. Lum, Fairlie & Foster (Mr. Charles S. Barrett, Jr., appearing), attorneys for defendant.
*103 GAULKIN, J.C.C. (temporarily assigned).
Plaintiffs contend that, upon the proper construction of the insurance policy sued upon, they are entitled to summary judgment.
The facts are not in dispute. Plaintiffs' part-time maid was injured while at work in plaintiffs' home. She filed a petition for workmen's compensation. Plaintiffs, contending that the policy which had been issued to them by defendant obligated defendant to indemnify them against such a claim, forwarded the petition to defendant. Defendant refused to defend plaintiffs on the ground that the policy does not cover workmen's compensation claims. The maid thereafter received an award from the Workmen's Compensation Division, and the plaintiffs in this action ask that the defendant pay the amount of the award.
The policy, headed "Comprehensive Personal Liability Policy," contains the following pertinent provisions.
The policy on its face shows that it was designed to cover residence locations. Item 5 of the declarations states that "No business pursuits are conducted at the premises." Item 7 asks for "the number of full time residence employees," to which the answer is "none." The coverage, for "A Liability" is "$10,000 each occurrence," while for "B Medical Payments" it is "$250 each person."
"Coverage A  Liability" is defined as the obligation
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, and as damages because of injury to or destruction of property, including the loss of use thereof."
"Coverage B  Medical Payments" is defined as the obligation
"To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, ambulance, hospital, professional nursing and funeral services, to or for each person who sustains bodily injury, sickness or disease, caused by accident * * *."
sustained (among others) "by a residence employee while engaged in the employment of an insured. * * *"
*104 Under coverage A the company undertakes to
"defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof * * *."
Under the heading "Exclusions" the policy provides that it does not apply:
"(a) to any business pursuits of an insured * * *
(b) to (1) automobiles while away from the premises * * * (2) watercraft * * *, while away from the premises, or (3) aircraft, or the loading or unloading of any of the foregoing; but, with respect to injury sustained by a residence employee while engaged in the employment of the insured, parts (1) and (2) of this exclusion do not apply, and part (3) applies only while such employee is engaged in the operation or maintenance of aircraft; * * *
(d) to bodily injury to or sickness, disease or death of (1) any employee of the insured while engaged in the employment of the insured, if benefits therefor are either payable or required to be provided under any workmen's compensation law; or (2) any residence employee of the insured while engaged in the employment of the insured if the insured has in effect on the date of the occurrence a policy providing workmen's compensation benefits for such employee; * * *."
It is agreed that the plaintiffs did not have in effect on the date of the occurrence any policy other than the one sued upon.
The "Exclusions" further provide that the policy does not apply:
"(e) under coverage A, to liability assumed by the insured under any contract or agreement * * *"
(g) under coverage B, to bodily injury to or sickness, disease or death of (1) any person while engaged in his employment if benefits therefor are payable under any workmen's compensation law; * * * or (3) any person, other than a residence employee, if such person is regularly residing on the premises * * *."
Plaintiffs' argument may be summarized as follows. Although exclusion (d) (1), standing by itself, clearly excludes a workmen's compensation award to "any employee," the insertion of exclusion (d) (2), to cover "residence employees" specially must be held to mean that defendant meant to take *105 the special class "residence employees" out of the general class "any employee" mentioned in (d) (1), and therefore, although workmen's compensation claims by employees generally are not covered by the policy, workmen's compensation claims of residence employees are covered if the policyholder has no specific workmen's compensation insurance "in effect on the date of the occurrence."
Plaintiffs say that the reason for placing residence employees in a special category may have been R.S. 34:15-92 which provides as follows:
"Nothing in this article [Article 5, Compulsory Insurance, requiring every employer to make provision for the payment of workmen's compensation by carrying insurance or qualifying as a self-insurer] * * * shall apply to any employer of farm laborers or domestic servants * * *."
Plaintiffs suggest that, having this section in mind, the defendant company meant by (d) (2) to make special provision to indemnify, against his liability under the Workmen's Compensation Act, the "employer of * * * domestic servants," who did not procure specific workmen's compensation insurance.
Plaintiffs contend that, in any event, (d) (2) is separate, complete, and free from ambiguity, and plainly means that the policy does cover the workmen's compensation claim of plaintiffs' maid, since plaintiffs did not have in effect, on the date of the occurrence, a special workmen's compensation policy. Further, say plaintiffs, even if it be argued that (d) (2) does not clearly and unambiguously have the meaning which they urge, the least that can be said is that the policy is ambiguous, and therefore, applying well recognized rules of interpretation, the policy must be construed liberally in favor of the insured (Schneider v. New Amsterdam Casualty Co., 22 N.J. Super. 238 (App. Div. 1952), and cases therein cited), and against the company, which chose the language, since this is not a statutory standard policy (Herbert L. Farkas Co. v. New York Fire Insurance Co., 5 N.J. 604, at 610 (1950); Steiker v. Philadelphia National Insurance Co., *106 7 N.J. 159, at 166 (1951)). Therefore, say the plaintiffs, ambiguous or unambiguous, the contract should be interpreted as covering their maid's workmen's compensation claim.
Defendant's answering argument may be summarized as follows. The Comprehensive Personal Liability policy is designed to cover only the employer's so-called "common law" liability, as modified by Article 1 (actions at law) of the Workmen's Compensation Act, R.S. 34:15-1 et seq. All workmen's compensation awards, whether to residence or other employees, made under Article 2 (elective compensation) of the Workmen's Compensation Act, R.S. 34:15-7, are excluded under (d) (1), whether or not the employer carries specific workmen's compensation insurance. In addition, under (d) (2), even the common law liability to a residence employee is excluded if the employer carries a "policy providing workmen's compensation benefits for such employee." The defendant says the policy should be so construed because:
(a) Benefits payable under workmen's compensation laws are not "damages," and this policy covers only the liability to pay damages.
(b) The two clauses, (d) (1) and (d) (2), being separated by the disjunctive "or," coverage is denied in all cases falling under either clause.
(c) Plaintiffs' interpretation of the policy would make the policy illegal under R.S. 34:15-87 because, to quote from defendant's brief, it
"* * * prohibits the inclusion, in any policy insuring against liability arising under the Workmen's Compensation Act, of:
(1) any limitation of the liability of the insurer to an amount less than that payable by the assured on account of his entire liability under the Act, or
(2) any coverage against liability other than the liability of the employer for compensation under `this chapter' and for damages imposed by law because of personal injuries sustained by his employee.
These two statutory provisions are violated if the policy here be construed as covering liability arising under the Act, in that:
(1) The policy limits the defendant's liability for `damages because of bodily injury, sickness or disease, including death at any time *107 resulting therefrom, sustained by any person' to $10,000 * * *, whereas the act, * * * permits a maximum recovery for permanent total disability of $13,500 plus rehabilitation payments, if required.
(2) The policy limits the recovery for medical payments to $250 for `each person' whereas the Act requires that `the employer shall furnish to the injured workman such medical, surgical and other treatment as shall be necessary * * *' * * *.
(3) * * * the policy affords coverage broader than that permitted by the statute, particularly in that liability is not limited to that imposed by the Workmen's Compensation Law, nor to employees legally employed."
In support of its argument that the term "damages" excludes workmen's compensation claims, defendant cites Hurt v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co., 175 Md. 403, 2 A.2d 402, 403 (Ct. App. 1938). In that case the plaintiff employee had been injured in Maryland, and had there received a workmen's compensation award. The employer, a resident of Pennsylvania, had procured from the defendant in Pennsylvania a workmen's compensation policy which carried two endorsements, one called the "Standard Pennsylvania Workmen's Compensation Endorsement," and the other "Endorsement: Employer's Liability." The former was limited to workmen's compensation awards for injuries sustained in Pennsylvania, and admittedly did not cover plaintiff's claim. It was contended that the latter endorsement did cover, because it read (2 A.2d at 403):
"* * * to indemnify this employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed wherever such injuries may be sustained within the territorial limits of the United States of America or the Dominion of Canada."
The Maryland Court of Appeals, properly it seems to me, rejected this contention. The reason for the rejection is given on page 405 of 2 A.2d as follows:
"Recurring then to the rider, or endorsement, in which the extension of the compensation insurance is sought, the well-known distinction between workmen's compensation insurance, that to cover liability *108 for the fixed weekly sums payable upon disability from accidental injuries within the purview of the statutes, and employers' liability insurance, against damages recoverable in suits at law, would, in the absence of any contradiction, tend toward an inference that this endorsement, for `Employers Liability,' is not concerned with awards of workmen's compensation. And the limitation of $25,000 upon insurance payable under it, which is not appropriate to the scheme of weekly payments under a compensation statute, is another indication of the distinction contemplated."
However, the court did not hold that the use of the term "damages" would, in every case, exclude a workmen's compensation award. Though the court did say that "the word `damages,' while a word loosely used, is in its ordinary acceptation opposed to awards of previously fixed compensation," it seems to me that all that the Hurt case held was that, in the policy there involved, the word damages did not include a workmen's compensation award.
In the Hurt case the plaintiff relied heavily on the Canadian case of Chamberlain v. North American Accident Insurance Co., 9 Alberta Law R. 538, 28 Dominion Law R. 298 (Sup. Ct., App. Div. 1916). Plaintiffs here also rely heavily on that case. That case did hold that "damages" included a workmen's compensation award, but a reading of that case will show that, there also, all that the court held was that under the circumstances of that case, the word damages in the policy then before it should be so interpreted. The case does not stand for the proposition that the word "damages" will always include a workmen's compensation award. See also Hagenah v. Lumbermen's Mutual Casualty Company, 241 Wis. 226, 5 N.W.2d 760 (Wis. Sup. Ct. 1942), annotated in 142 A.L.R., at 1423, where the court held that the term damages as used in the policy before it did include a workmen's compensation award.
It seems to me that the most that can be said for each of these three cases (and the diligence of the able counsel on both sides revealed no others), is that the term "damages" must be construed within the context of each particular policy, and in the light of the circumstances of each particular case.
*109 Each side also refers to sections of the Workmen's Compensation Act as supporting their respective interpretations of "damages," defendant citing R.S. 34:15-87, and plaintiffs countering with R.S. 34:15-39. These references do not define "damages," nor answer our present question. They merely prove that, as the court said in the Hurt case, supra, "damages" is a word loosely used.
Turning, then, to the language of the policy before us, it seems to me it would be helpful to go back to some first principles of interpretation. Professor Corbin's statement of those first principles is, I think, especially applicable to the case at bar. In 28 Yale Law J. 739 he said,
"In almost all cases of contract, legal relations will exist * * * that one or both of the parties never consciously expected would exist, and therefore cannot be said to have intended.
* * * a necessary function of the courts is to determine the unintended legal relations as well as the intended ones. In taking this step the court may put to itself two questions: first, what was the actual state of mind of the contracting parties, their meaning and intention at the time they said the words * * *; second, what meaning do the words and acts of the parties now express to a reasonable and disinterested third party? Frequently the only way to arrive at an answer to the first question is to answer the second; in other cases the two may both be susceptible of answer and the two answers may not agree."
Corbin quotes from Becker v. London Assur. Corp. (1918 H.L.) 117 L.T. Rep. 609:
"I dare say few assured have any distinct view of their own on the point, and might not even see it if it were explained to them, but what they intend contractually does not depend on what they understand individually. If it is implicit in the nature of the bargain, then they intend it in law just as much as if they said it in words."
In Merchants Mutual Casualty Co. v. Melcher, 94 N.H. 174, 49 A.2d 504 (Sup. Ct. 1946), the court said that the test to be applied is not what the insurance company intended the clause to mean, but what a reasonable person would have understood it to mean.
*110 Let us then ask Professor Corbin's first question. What was the actual state of mind of these contracting parties? What did they intend by these words?
Since this motion for summary judgment is based solely upon the language of the policy, there is no evidence before me of the dealings between the parties that resulted in the issuance of the policy. We therefore have no clue to the state of mind of the plaintiffs. Obviously they did not choose the words. If they are like most policyholders, they very likely did not read the policy. Since able counsel cannot agree upon the meaning of the policy, and the problem is difficult, it is quite likely the plaintiffs did not understand the policy if they did read it, although it must be admitted that to the layman who does read it, the policy would seem to mean what plaintiffs now claim it means.
The defendant, on the other hand, tells us what it intended by the words. To quote from defendant's affidavit and brief:
"The Comprehensive Public Liability Policy is a policy used by all of the companies writing this type of insurance that are members of the National Board of Casualty Underwriters, and is used by said companies in all of the States of the United States * * *."
"Domestic servants are given special treatment by the workmen's compensation laws of the various states. Most laws specifically except them and their employers from the definition of `employee' and `employer' as used in the acts, but provide for election of coverage by the employer's filing or insuring or by joint action of employer and employee. In eleven states the domestic servant is specifically excepted but the employer may elect to provide and pay compensation benefits by insuring. It is in these eleven states that exclusion d(2) is of primary importance, as the Comprehensive Personal Liability Policy was not designed or intended to cover compensation benefits payable or required to be provided to any employees. In the absence of d(2) the wording of d(1) might easily be construed as not excluding coverage for domestic servants as to whom the employer has elected to provide benefits by insuring. In other words, a court in one of these eleven states might come to the conclusion that, since the law neither makes benefits payable nor requires them to be provided for domestic servants, d(1) alone does not exclude policy coverage for them. For these reasons exclusion d(2) was made a part of the policy."
Defendant admits that since the policy was issued in New Jersey, the plaintiffs may not be presumed to know, nor to be *111 bound by, what the law is in states other than New Jersey. However, let us examine defendant's explanation of its reason for the use of (d) (2).
New Jersey is the only state in the union in which all domestic servants are included in the coverage afforded under the Workmen's Compensation Act. In four other states  California, Connecticut, New York and Vermont  only certain domestic servants are expressly covered by the acts. In all the other 43 states, and in the District of Columbia, domestic servants are excepted from the acts. 2 Larson, Workmen's Compensation Law 514.
According to a chart submitted by defendant, it appears that in 33 states the employer (in some cases the consent of the employee is essential) may place his domestic servants under the act. In at least 22 of those states it is done by giving notice of such choice, usually by filing with a public body, or by posting a notice, or both. If the statute requires employers of covered employees to provide insurance or qualify as self-insurers, the employer of a domestic servant who has elected coverage must do so as well, unless the statute exempts him. In the other 11 states, the employer may indicate his election by purchasing a workmen's compensation insurance policy. In five of these states it seems to be the only method of so electing; in the remaining states it may be done by filing or insuring.
The mere procuring of a workmen's compensation policy does not place an employee within the coverage of a Workmen's Compensation Act, nor make benefits thereunder payable, unless first, the act by its terms or by its construction embraces the particular employment, or the circumstances estop the employer from denying that the particular employment is covered, and second, the statute provides the machinery with which to arrive at an award to the employee. Otherwise, the employee may recover no workmen's compensation benefits from his employer or from the employer's insurer, even though a workmen's compensation policy has been issued. Keeney v. Beasman, 169 Md. 582, 182 A. 566, 103 A.L.R. 1515 (Md. Ct. App. 1936), annotated *112 103 A.L.R. 1523; Fields v. General Casualty Co. of America, 216 La. 940, 45 So.2d 85 (La. Sup. Ct. 1950); Rugg v. Norwich Hospital Assoc., 205 App. Div. 174, 199 N.Y.S. 735 (App. Div. 1923); Davis v. W.T. Grant Co., 88 N.H. 204, 185 A. 889 (N.H. Sup. Ct. 1936).
Consequently, the policy mentioned in exclusion (d) (2) as one "in effect on the date of the occurrence * * * providing workmen's compensation benefits" must mean a valid policy  one under which the employee can recover workmen's compensation benefits. That means, in turn, a policy which provides benefits to an employee who was under the Workmen's Compensation Act before the policy was procured, or became covered by the very act of procuring the policy.
The question then is, what about the residence employee whom the employer has elected to bring into the Workmen's Compensation Act (or who is under the Workmen's Compensation Act by operation of law and without the action of the employer as in New Jersey), but for whom the employer has not obtained workmen's compensation insurance? Is the defendant company liable for an award to such an employee? Defendant says no, because to such employee "benefits * * * are either payable or required to be provided under * * * workmen's compensation law * * *" and they are excluded under (d) (1). But the residence employee for whom the valid "policy providing workmen's compensation benefits" mentioned in (d) (2) is obtained is also, as we have seen, an employee for whom "benefits are * * * payable * * * under any workmen's compensation law," and she, too, would be excluded by (d) (1). So if all domestic servants who come under a Workmen's Compensation Act, by the election of the employer or by operation of law, are excluded by (d) (1), then (d) (2) is useless surplus. Where the action of the employer in obtaining a workmen's compensation policy places the employee under the Workmen's Compensation Act, that employee would be excluded by (d) (1), and there would be no need for (d) (2) at all.
It is to be noted also that under exclusion (e), mentioned above, the company does not cover "liability assumed by the *113 insured under any contract or agreement." Would not that also, even in the absence of (d) (2), bar any claim based upon the voluntary assumption of the employer of workmen's compensation liability?
Therefore, to give (d) (2) the narrow construction urged by defendant, seems to me to make it useless. It is difficult to believe that the members of the National Board of Casualty Underwriters, who drafted this policy, meant to do a useless thing when they chose the words in (d) (2). Is it not more reasonable to assume that the companies, mindful of the special situation regarding the domestic servant in all jurisdictions except New Jersey, drawing a uniform policy to be used by them throughout the country, intended to make special provision for residence employees as a class, apart from all other employees? Upon that interpretation, (d) (2) takes on meaning. No part of any contract, particularly a policy prepared with the care with which this one was prepared, should be treated as useless unless it is indeed useless. On the contrary, the policy should be so construed as to give every word of it its fair weight and meaning. American Shops, Inc., v. Reliance Ins. Co. of Philadelphia, 22 N.J. Super. 564 (Cty. Ct. 1952); Prather v. American Motorists Insurance Co., 2 N.J. 496 (1949).
It appears to me, as Professor Corbin's "reasonable and disinterested third party," that the companies, by the language which they used in this policy, have agreed first, to cover their assured's common law liability to residence employees so long as those residence employees are not within the coverage of a Workmen's Compensation Act. Second, if the residence employee comes under such coverage, defendant by "Coverage A" of this policy has agreed to indemnify its assured, to the limit of the policy, against any workmen's compensation award to such employee, unless the employer has a specific "workmen's compensation" policy.
Defendant's explanation of the use and purpose of (d) (2), based on the conditions as they exist in other states, has been analyzed first, because defendant has made it a substantial part of its argument, and second, to see whether the argument, *114 if valid elsewhere, has any pertinence in New Jersey. As I have indicated, I do not find the argument would be valid in any other state. However, in the final analysis, the question is not what (d) (2) does in other states, but what (d) (2) means in New Jersey.
This policy having been issued here to a New Jersey resident, the interpretation that is to be reasonably placed upon it by one in the position of the insured must be determined in the light of the legal position of the parties as they find themselves here, and the rights of residence employees and the obligations of employers under our law. Looking at the policy from this insulated view, it seems to me even clearer that the above interpretation must be here adopted.
I do not find that the above interpretation makes the policy illegal under R.S. 34:15-87. The employer here was under no obligation to provide any insurance. The cited statute relates only to policies which must be provided, pursuant to the Workmen's Compensation Act, by those who are not self-insurers. Furthermore, whatever penalties the defendant may be subject to in proceedings by the State, assuming the policy does violate the statute, defendant cites no authority for the proposition that the assured may not recover upon it.
Under coverage B, the exclusion is much broader than (d) (2), and plaintiffs so admit in their reply brief. As has been quoted above, under coverage B every employee is excluded "* * * if benefits * * * are payable (to him) under any workmen's compensation law." Plaintiffs may not recover under "Coverage B."
There will be summary judgment for the plaintiffs against defendant within the limits of coverage A of the policy.