173 So.2d 754 (1965)
MICHIGAN MUTUAL LIABILITY COMPANY, a foreign insurance company, Appellant,
v.
O'Nell MATTOX, d/b/a Mattox Electric Company, Appellee.
No. F-367.
District Court of Appeal of Florida. First District.
April 1, 1965.
Rehearing Denied April 29, 1965.
*755 Howell, Kirby, Montgomery & Sands, Jacksonville, for appellant.
Greene, Greene & Kennelly, Jacksonville, for appellee.
STURGIS, Chief Judge.
Appellant, Michigan Mutual Liability Company, hereinafter referred to as the "insurer" brings this appeal from a judgment entered upon a jury verdict for appellee, O'Neil Mattox, plaintiff below, hereinafter referred to as the "insured."
The insured, an electrical subcontractor, entered into a subcontract with The Auchter Company, a general contractor, to do certain electrical work on the municipal civic auditorium in Jacksonville, Florida. The subcontract contains the following provision:
"6. The SUB-CONTRACTOR shall be solely responsible for all injury or damage to persons or property resulting from any act or omission of the SUB-CONTRACTOR in connection with the performance by it of the work covered by this Agreement and shall indemnify and hold the CONTRACTOR and/or the Owner harmless from any and all liability whatsoever which the CONTRACTOR and/or the Owner may incur as a result of any such act or omission."
The insurer issued a comprehensive general liability policy to the insured, and by reference incorporated therein the contract between the insured (subcontractor) and the general contractor. The policy required the insurer to pay on behalf of the insured all sums which the insured should become legally obligated to pay as damages because of injury to or destruction of property incident to its said contract with the general contractor. The policy excluded injury to or destruction of "property used by or in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control."
The main switchboard in the auditorium was completed by the insured and had been turned over to the general contractor. It was located in a room in the basement of the auditorium and kept under lock and key, the keys being held by the general contractor and the electrical department of the City of Jacksonville. It had been in use about two months when an accident damaged it.
On the day of the accident giving rise to this suit, employees of the insured were in the process of completing other electrical work called for under the subcontract. Two employees of the City's electrical department desired to check the metering device on the switchboard. They did not have a key to the switchboard room and contacted one of the insured's employees to secure same. The employee obtained a key from the key board of the general contractor and opened the door to the switchboard room, then returned to his duties. Shortly thereafter the lights in the building went out and several of the insured's employees went to the switchboard room to determine the cause. One of them activated the circuit breaker on the switchboard and an explosion ensued which severely damaged the switchboard. The insured notified the insurer of the accident and proceeded to repair the damage. An arbitration agreement was entered into between the City and the general contractor to determine the responsibility for the accident. The insurer informed appellee that it would not acquiesce in or consent *756 to any arbitration agreement. The insured agreed with the general contractor to abide by the terms of the arbitration agreement, conceiving itself to be so obligated under the terms of the subcontract. The arbitrator found that the City of Jacksonville had been two-thirds at fault and the general contractor one-third at fault. Pursuant thereto the insured paid the general contractor $8,121.85 and then made a claim against the insurer for that amount. The insurer denied coverage and the insured brought this suit, resulting in a jury verdict in its favor for $8,831.61. Final judgment was entered thereon, hence this appeal.
The insurer's first point on appeal is that the insured failed to establish the material allegation of the complaint to the effect that the switchboard was damaged by employees of the insured while in the performance of the contract between the insured and the general contractor. It is the insurer's contention that the evidence shows, on the contrary, that the insured was not performing any duty under the subcontract when the accident occurred, and that such is a prerequisite to liability under the insurance policy. To sustain this contention, the insurer submits that the switchboard had been completed and that the insured was under no duty at the time of the accident to repair it should anything happen to impair its operation, as did occur. We find no merit in this contention. The evidence is clear that employees of the insured were at the time engaged in the performance of the over-all subcontract, of which the installation of the switchboard was but a part.
The insurer also contends that the aforementioned exclusionary clause of the policy bars the insured from recovery. As we have noted, the clause purports to disallow coverage for injury or destruction of "property used by or in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control." The insurer insists that the insured's employees were clearly shown to have been exercising control over the switchboard in that (a) the insured was the electrical subcontractor, (b) the switchboard had not been turned over to the owner, (c) its foreman was in charge of the entire job, (d) its employee threw the switch which caused the explosion, and (e) its employees had let the City's employees into the switchboard room. A construction of said exclusionary clause is necessary to a determination of this point. There are no Florida cases construing same but we find well-reasoned cases from other jurisdictions construing the same contrary to the insurer's contentions. It is axiomatic, of course, that such provisions are to be strictly construed against the insurer.
The identical clause was recently construed in Klapper v. Hanover Insurance Company, 39 Misc.2d 215, 240 N.Y.S.2d 284 (1963). This was a suit by a subcontractor against his insurer to determine the applicability of the clause to a situation where the subcontractor had damaged windows he had been cleaning pursuant to a contract with the general contractor. The question was whether these windows were in the care, custody or control of the subcontractor within the purview of the exclusionary clause. The court answered this question by stating:
"For the Court to hold that the windows in question were in the care, custody and control of the plaintiff, who was upon the premises for the purpose of cleaning said windows, is, in the Court's opinion, stretching a point. Possession or control of real property is indicated by an occupation exclusive of the control of any one else. Plaintiff and his employees were upon the premises temporarily for the purpose of doing the work, and control of the property remained in the general contractor or owners. (Rex Roofing Company, Inc. v. Lumber Mutual Casualty Insurance Company of New York, *757 280 App.Div. 665, 116 N.Y.S.2d 876; General Mutual Insurance Company v. Wright, 7 Misc.2d 331, 161 N.Y.S.2d 974; A.T. Morris & Co., Inc. v. Lumber Mutual Casualty Insurance Company of New York, 163 Misc. 715, 298 N.Y.S. 227.)"
We agree to the principle expressed and hold it applicable to the case on review. In this case the switchboard had been completed and installed with its electrical connections in a room under lock and key, with the key being in the possession of the general contractor. Under these circumstances it would be "stretching a point" to hold that the switchboard was in the care, custody or control of the insured at the time of the accident.
In Elcar Mobile Homes, Inc. v. D.K. Baxter, Inc., 66 N.J. Super. 478, 169 A.2d 509 (1961), there is an extensive discussion of the exclusionary clause here involved. In that case Baxter, a paint contractor, was hired by Elcar to sandblast and refinish a trailer for purposes of completing a sale. An agent of Baxter came to Elcar's premises and commenced the sandblasting without moving the trailer off the premises. During that operation the metal on the trailer buckled and Baxter sued his insurer, who denied liability. The trial court entered summary judgment for the insurer and Baxter appealed, contending that the trial court erred in holding under the exclusionary clause that the trailer was in the care, custody or control of Baxter or that Baxter was exercising physical control over the same when the damage occurred. In reversing the judgment the appellate court noted that in Boswell v. Travelers Indemnity Co., 38 N.J. Super. 599, 120 A.2d 250 (App.Div. 1956), it was held that the words "care, custody or control" were "inherently ambiguous"; and in discussing the exclusionary clause the court said:
"The remaining alleged purpose (and the only one pertinent here) is to eliminate the `possibility of the insured making the insurance company a guarantor of its workmanship.' It is quite reasonable for an insurance company to seek to avoid such liability. We should think that an accident policy such as the one before us does not guarantee workmanship, but if the insurance company thinks it needs to make that plain beyond dispute, it is a mystery to us why the insurer does not say so in simple language. It is not a concept difficult to express. See, for example, Berger Bros. Electric Motors v. New Amsterdam Cas. Co., 293 N.Y. 523, 58 N.E.2d 717, 718, 156 A.L.R. 1281 (Ct.App. 1944).
* * *
"We are of the opinion that what constitutes `care, custody or control' or `exercising physical control' depends not only upon whether the property is realty or personalty, but as well upon many other facts, such as the location, size, shape and other characteristics of the property, what the insured is doing to it and how, and the interest in and relation of the insured and others to it. Whether the property is realty or personalty, and the precise legal relationship of the insured and others to it, may be material in a given situation; but when they are, they are merely facts (more or less important, depending upon the circumstances) to be taken in conjunction with all other facts, in determining whether there is exclusion.
* * *
"Equally unmanageable as a guide for decision is the attempted distinction between property damaged which `is merely incidental to the property upon which the work is being performed by the insured,' and property `which is a necessary element of the work involved.' The distinction is easy to make verbally, but we conceive that, when it was applied to a given state of facts, the facts have governed, and not the verbalization. The alleged distinction rarely dictated the result; *758 rather it justified it. The insured is entitled to rely upon what he reads in the policy. He is not expected to know the fine distinctions between realty and personalty, or to understand the nuances of `care,' `custody,' `control,' or similar terms. McAllister v. Century Indemnity Co., 24 N.J. Super. 289, 294, 94 A.2d 345 (App.Div. 1953), affirmed o.b. 12 N.J. 395, 97 A.2d 160 (1953); Gunther v. Metropolitan Casualty Ins. Co., 33 N.J. Super. 101, 109, 109 A.2d 485 (Cty.Ct. 1954). As we said in Boswell, `it must not be forgotten that the primary object of all insurance is to insure.' [38 N.J. Super. 599, 120 A.2d 253]."
No rule of general application can be derived from the numerous cases dealing with the clause. See Annot. 62 A.L.R.2d 1242 (1958), et seq.
Applying the principles discussed to the case now on review, we hold that the switchboard was not in the care, custody or control of the appellee at the time of the accident.
The insurer's third point questions the validity of the arbitration agreement entered into by the general contractor and the City of Jacksonville, with which the insured agreed to comply. There is no merit in that contention. The policy in suit requires the insurer to defend an arbitration proceeding wherein the indemnitee (the general contractor here) under a written contract (the subcontract with the insured) seeks damages against the insured on account thereof, and wherein the insurer is entitled to exercise the insured's rights in the choice of arbitrators and in the conduct of such arbitration proceedings. In this case the general contractor sought indemnification of the insured who in turn notified the insurer of such claim. The insurer then refused to participate in any arbitration proceedings. This refusal was not justified under the circumstances, thus relieving the insured of its policy obligation not to effect a settlement. The insured's actions in seeking a settlement were just and reasonable and the insurer's position in this regard is untenable. Moreover, it is shown that the insurer agreed to the introduction into evidence of the arbitration agreement and award and so is in no position now to complain of its adverse effect.
Appellant's fourth point on appeal deals with a colloquy between counsel for appellant and a juror on the voir dire examination, which appellant claims was prejudicial to its cause. We find no merit to appellant's contention in this regard.
The judgment appealed is
Affirmed.
RAWLS, J., and PATTEN, GEORGE L., Associate Judge, concur.