ERVIN, J.
Childtime Child Care, Inc. (Childtime or appellant), a daycare center, appeals a final summary judgment entered in favor of Colony Insurance Company (Colony or insurer), which held that the exclusionary clause in a commercial general liability insurance policy issued by Colony to the insured Steamway of North Florida, Inc. (Steamway), a commercial carpet and floor cleaning operator, precluded coverage for damages to personal property owned by Childtime in the “care, custody or control” of Steamway. Because we conclude that the lower court erred in determining that no genuine issues of material fact remained unresolved as to whether the damaged items were in Steamway’s possession at the time of the loss, the summary judgment is reversed and the case remanded for further proceedings.
Steamway entered into a contract with Childtime to clean its floors during the weekends while the center was closed. To facilitate the cleaning, Steamway employees, on the day of the occurrence, removed furniture and other items to the outside of the building, where they were later substantially damaged by rainfall. Child-time’s former director, Ms. Amy Williams, testified that Steamway was neither instructed nor expected to move the furniture outdoors.[1] She added that, had she known Steamway contemplated moving the furniture from the building, she would have objected.
Childtime made a claim for damages against Steamway, which in turn filed a claim against Colony under its liability pol *1207 icy. Colony denied the claim, relying on the exclusion from coverage for “[p]ersonal property in the care, custody or control of the insured.” Steamway consented to a final judgment in the amount of $25,000, and assigned its claim against Colony to Childtime, which then filed the instant action, asserting coverage under the policy. In granting Colony’s motion for final summary judgment, the trial court found, “based upon the undisputed facts,” Child-time’s furniture and other personal items were, under the terms of the policy, in the care, custody and control of Steamway at the time of their damage. We cannot agree.
Our review of whether the damage to Childtime’s personal property comes within the scope of the exclusionary clause is de novo. See Fayad v. Clarendon Nat’l Ins. Co., 899 So.2d 1082, 1085 (Fla.2005). Initially, we note that such exclusions are generally considered ambiguous, see Michigan Mutual Liability Co. v. Mattox, 173 So.2d 754, 757 (Fla. 1st DCA 1965), and that ambiguous “exclusionary clauses are construed even more strictly against the insurer than coverage clauses,” Auto-Owners Insurance Co. v. Anderson, 756 So.2d 29, 34 (Fla.2000). The purpose of the exclusion is explained in Appleman’s treatise, as follows:
General liability and automobile liability insurance is basically protection against claims from third parties. The general intent of these exclusions is to avoid coverage on property that should be covered separately under property and products liability insurance.
[[Image here]]
Purpose of exclusion
The “care, custody, or control” provision of a comprehensive liability policy is aimed at eliminating coverage where the insured is closely related to some type of work related situation where the insured is exercising some sort of control over the property subsequently damaged and to remove the inducement for the insured to submit exaggerated or false claims and avoid the guarantee of workmanship.
7A Appleman, Insurance Law & Practice § 4493.03 (1979) (footnotes omitted); see also Donald M. Zupanec, Annotation, Scope of Clause Excluding from Contractor’s or Similar Liability Policy Damage to Property in Care, Custody, or Control of Insured, 8 A.L.R.4& 563, 570 (1981). Where the damage is to property belonging solely to others, the exclusion seeks to deter an insured from making its insurer a guarantor of its workmanship. See Elcar Mobile Homes, Inc. v. D.K. Baxter, Inc., 66 N.J.Super. 478, 169 A.2d 509, 511 (1961).
Pertinent case law recognizes, however, that the goal of the exclusion, to reduce the incentive for fraud, is of lesser relevance in situations where title to the property remains in other persons, and the insured is neither renting nor actively using the property at the time of its damage. As noted in Elcar:
The reference to ‘greater moral hazard’ [made by F.D. Cooke, Jr., Care, Custody or Control Exclusions, Ins. L. J. 7, 9 (1959)] appears to apply only to those sections of the exclusion clause which deal with ‘property owned or occupied by or rented to the insured, or * * * used by the insured’-i.e., property with reference to which the insured might benefit by falsely claiming that it had been damaged by ‘accident,’ or by exaggerating the loss. It is difficult to conceive how the question of moral hazard could arise with reference to property belonging solely and unconditionally to others.
Id. at 512.
Elcar pointed out that the case law had devised a number of rules for determining *1208 whether a particular factual situation falls within the reach of the exclusion, including “whether the property is realty or personalty, . . as well ... [as] many other facts, such as the location, size, shape and other characteristics of the property, what the insured is doing to it and how, and the interest in and relation of the insured and others to it.” Id. at 516. It noted that such variables, as well as those involving whether the property damaged is merely incidental to the work performed by the insured, in which event the exclusion is deemed inapplicable, or, conversely, whether such property is a necessary element of the work, are generally unreliable as guides for a decision, as applied to a given state of facts; instead, “the facts ... govern[ ], and not the verbalization.” Id. Elcar concluded that the particular circumstances before it, involving the insured’s sandblasting and painting of a trailer owned by and situated on the premises of Elcar Mobile Homes, Inc., did not come within the scope of the exclusionary clause, with the result that the summary judgment entered for the insurer was reversed, and the case remanded for trial.
The Elcar opinion has added significance because this court has specifically approved the Elcar analysis. See Mich. Mut. Liab. Co. v. Mattox, 173 So.2d 754 (Fla. 1st DCA 1965); Glens Falls Ins. Co. v. Fields, 181 So.2d 187 (Fla. 1st DCA 1965). In applying the reasoning of Elcar, the Mattox court affirmed a final judgment, which had rejected the insurer’s defense that the insured, an electrical contractor, was in control of a switchboard it had previously installed, when at the time the switchboard was damaged, the insured was simply inspecting a metering device on the switchboard. In reaching its decision, the court observed that the insured and his employees were at the. site only temporarily for the purpose of doing the assigned work, and that control of the property remained with the general contractor, not with the insured subcontractor. In so deciding, the court pointed out that the general contractor retained the key to the premises. Similarly, in the case at bar, Steamway never had a key to the Childtime facility, nor was Steamway authorized to lock the premises after leaving.
In the present case, Steamway’s temporary possession of personal property owned by Childtime for the purpose of moving that property from the area to be cleaned clearly enabled Steamway’s employees to perform the work required, but we doubt that such act could be described an essential element of the work, particularly the property’s questionable relocation to the outside of the building. However, even if such action could be considered essential to the work’s performance, the facts are undisputed that at the time the damage occurred, the property was no longer within the control of Steamway, but had been returned to that of Childtime.
Thus, the facts in this case are unlike those in Hardware Mutual Casualty Co. v. Mason-Moore-Tracy, Inc., 194 F.2d 173 (2d Cir.1952), in which the insured was involved in the movement of heavy machinery in an elevator, and, during the course of the work, the elevator was damaged. In deciding that the exclusion applied, because the insured was in control of the elevator, the court noted that although the insured had no greater right than others to use the elevator, its actual use at the time of the injury effectively excluded its use by others. Similarly, in Phoenix of Hartford v. Holloway Corp., 268 So.2d 195, 199 (Fla. 4th DCA 1972), a piece of heavy equipment known as a reactor head was damaged while being moved by a crane from a truck to a pedestal in a water tank. In reversing summary judgment against the insurer as to the issue of whether the *1209 reactor head was in the care, custody or control of the insured crane operator, the Fourth District held that the crane operator had possessory control of the reactor head at the time of its damage, thereby activating the applicability of the exclusionary clause.
The differences between the two above cases and the case át bar are obvious. It was absolutely essential to the performance of the work in both Hardware Mutual and Phoenix that the pieces of equipment be moved, and, at the time of their damage, they were clearly in the control of the insureds. Because, in Phoenix, no issue was before the court whether the water tank, also damaged, was in the insured’s possession, the court did not decide it, but it can hardly be questioned that such property remained in the control of the owner. For example, in Glens Falls Insurance Co., this court, in affirming a summary judgment entered against an insurer, held that a cement silo, damaged when the crane boom operated by the insured crane operator collapsed, was not in the physical control of the crane operator, but rather remained with the building supply company, which had rented the mobile crane and crane operator. Glens Falls Ins. Co., 181 So.2d at 189. Under circumstances such as those in Glens Falls Insurance Co. and the present case, the recognized purpose of the exclusion clause is inapplicable, because the opportunity for a fraudulent claim is considerably diminished where the property damaged is owned by another and the insured’s relationship with it is only passive at the time of the harm.
REVERSED and REMANDED.
KAHN, J., concurs; VAN NORTWICK, J., dissents with opinion.

. Ms. Williams’ expectations were apparently based on the fact that Steamway had, while cleaning the floors of another school, transferred the furniture to the school's hallways, rather than to its exterior.