VAN NORTWICK, J.,
dissenting.
I respectfully dissent. I agree with the trial court that, based upon the undisputed facts, the damage to Childtime’s- property was not covered under the commercial general liability insurance policy issued by Colony based upon the “care, custody or control” exclusionary clause in the policy. Accordingly, I would affirm.
Under the commercial general liability policy issued by Colony to Steamway, Colony has the following insurance obligation:
We will pay those sums that the insured becomes legally obligated to pay as damages because of ... “property damage” to which this insurance applies. We will have the right and duty to defend the insured against any “suit” seeking those damages. However, we will have no duty to defend the insured against any “suit” seeking damages for ... “property damage”-to which this insurance does not apply. We may, at our discretion, investigate any “occurrence” and settle any claim or “suit” that may result....
“Property damage” is defined to mean:
a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the “occurrence” that caused it.
The policy contains an exclusion for property damage to “[pjersonal property in the care, custody or control of the insured ...,” which is the subject of this action.
Florida courts have held that the type of “control” contemplated by the- care, custody or control exclusion is “possessory control.” See Phoenix of Hartford v. Holloway Corp., 268 So.2d 195, 199 (Fla. 4th DCA 1972). In Phoenix, Holloway Corp. contracted with the defendants, the insureds of Phoenix, to move a piece of *1210 heavy equipment known as a reactor head from a truck to a pedestal in a water tank by use of a crane. Id. at 197. In lowering the reactor head into the water tank, the crane operator was receiving instructions as to the placement from employees of Holloway. Id. at 198. As this operation was in progress, the position of the crane suddenly changed causing the boom to strike the side of the water tank damaging the tank and the reactor head. Id. In the ensuing litigation seeking insurance coverage of the damage, Phoenix asserted the care, custody or control exclusion in its policy with the crane contractors.[2] An issue before the trial court was whether the reactor head which was attached to the crane was within the care, custody or control of the insured. Id. The trial court granted summary judgment against the insurer, ruling that the exclusion did not apply. Id. at 197. The Fourth District reversed in part, holding that the crane operator had “possessory control” of the reactor head; thus, the care, custody or control exclusion applied to the damage to the reactor head. Id. at 199. The court reasoned:
In the present case the control over the material object, i.e., the reactor head, was in ... the crane operator. It was this type of control which we believe was intended by the above quoted language to result in an exclusion from coverage, even though as in this case there was a type of control which might be called “proprietary” or “intellectual” being exercised by one who was not the insured.
Id. at 199.
I also find helpful the reasoning of the court in Royal Indemnity Co. v. Smith, 121 Ga.App. 272, 178 S.E.2d 738 (1970). In that case, the insured had contracted to paint the exterior walls of a sewage treatment tank on which a radial sweeper arm was attached. The sweeper arm was designed to move only clockwise in the tank’s interior, and was damaged when the insured moved the arm counterclockwise. Reasoning that the exclusion was intended to protect the insurer from becoming a guarantor of the insured’s workmanship, the court found that the insured controlled only the tank, which it was hired to paint, not the radial arm, which had nothing to do with the insured’s painting workmanship. In so ruling, the court explained:
Should we attempt, to decide whether the sweeper arm was under the supervision of plaintiff and a necessary element of painting beneath the wheels of the catwalk, we would soon be counting angels as well as splitting hairs. We believe the better approach is to examine the purposes of the exclusion in the policy and determine whether this is the type of risk against which the insurance company had not calculated its premium.
[[Image here]]
The remaining purpose — -to avoid a guarantee of workmanship — is the one relevant here, and in many other borderline cases. It is a perfectly legitimate purpose for an “accident” policy, but to extend the meaning of workmanship to any contact with property during the course of a job is to virtually wipe out the primary coverage. Here, for example, if plaintiffs paint job had been *1211 so poor that the tank rusted within a few months and caused a structural collapse, the exclusion would apply, as workmanship, rather than accident, would be involved. We do not believe that [bending] the sweeper arm had anything more to do with painting workmanship than, for instance, dropping a spray gun into a city truck parked below. These are the kinds of occurrences against which a contractor insures himself-the “accidents” of the trade.
Id. at 740.
In the case under review, Childtime provided access to its premises to Steamway. Such presence on the premises, however, did not by itself constitute possessory control of all personal property on the premises. Compare Michigan Mut. Liab. Co. v. Mattox, 173 So.2d 754, 756-58 (Fla. 1st DCA 1965). Although Childtime did not expressly authorize Steamway to move the furniture and other personal property on the premises, it is undisputed that Child-time employees knew that Steamway would be required to take possession of and move the furniture and other property to enable it to clean the floor of the daycare center. Thus, Steamway was required to take possessory control of Child-time’s personal property as a necessary part of Steamway’s work under the contract.
Even interpreting this exclusionary clause strictly against the insurer, I agree with the trial court that, based upon the undisputed facts, Steamway had possesso-ry control of the furniture as a part of its work and, thus, the care, custody or control exclusionary provision applies. See Phoenix, 268 So.2d at 199. Unlike Royal Indemnity Co. v. Smith, the case before us does not involve damage to property of Childcare that was not in the possessory control of Steamway and was not an inherent part of Steamway’s work. Further, it is undisputed that the damage to the furniture was caused by Steamway negligently placing the furniture and other property outdoors where it could be damaged by the rain. Thus, since the movement of the personal property was part of Steamway’s work, the trial court’s application of the exclusion here is consistent with the purpose of avoiding the insurance carrier becoming a guarantor of the insured’s workmanship.

. The exclusion in the Phoenix policy provided:
This insurance does not apply:
(i) to property damage to
(3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control. ...
Phoenix of Hartford v. Holloway Corp., 268 So.2d 195, 198 (Fla. 4th DCA 1972).