This is an appeal from a declaratory judgment entered in favor of plaintiff Bonitz Insulation Company. The court held that the appellants, USFG and Employers Mutual Liability Insurance Company of Wisconsin, were both liable under insurance policies issued to Bonitz if a judgment were rendered against Bonitz and that both companies owed to Bonitz a duty to defend it in the action brought by the City of Midfield.
On June 9, 1972, Bonitz entered into a contract with the City of Midfield, Alabama, for the construction of the roofing and insulation on a gymnasium as part of a larger school construction project. Part of the roofing job was subcontracted to Vulcan Roofing Company. The job was completed in the fall of 1972, and the final billing to Midfield was in February of 1973. *Page 571 
As early as late fall of 1972, the roof began to leak. Bonitz was informed of the problem by letter in November of 1972 and July of 1973. The problem was referred to Vulcan, who attempted to repair the roof on several occasions. Water entry from the roof continued over the next several years, and the roof finally had to be completely replaced in 1978. Suit was filed on August 18, 1977, by the City of Midfield against Bonitz and others, alleging that Bonitz had breached its contract by failing to perform in a good and workmanlike manner and by failing to follow specifications in the installation of the roof.
At the time of the contract, and until January 1, 1977, Bonitz was insured by USFG under a comprehensive general liability policy. On January 1, 1977, the USFG policy was not extended, and the coverage was taken over by Employers. Both policies provided the following coverage:
 "The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
"A. bodily injury or
"B. property damage
 to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements."
Upon the filing of the action by the City of Midfield, Bonitz immediately forwarded suit papers to both USFG and Employers. USFG denied coverage and Employers assumed defense of the suit under a reservation of rights.
Bonitz then filed the instant action for declaratory judgment. The trial court, in its final decree, without explanation and without making any findings of fact, ordered both insurance companies to defend the suit against the plaintiff and to pay any judgment rendered against Bonitz in the suit brought by the City of Midfield.
From that judgment both insurance companies appeal. We reverse in part and remand.
USFG and Employers first contend that the water entry problem made the basis of the underlying action did not constitute an occurrence under their respective policies. Both policies define "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results inbodily injury or property damage neither expected nor intended from the standpoint of the Insured."
Addressing each insurance company's claim separately, we disagree with USFG's argument that, if Bonitz were negligent in the installation of the roof, then there could have been no "accident" or "occurrence" within the terms of the policy. We have previously held that the term "accident" does not necessarily exclude human fault called negligence. EmployersInsurance Co. of Alabama, Inc. v. Alabama Roofing Siding Co.,Inc., 271 Ala. 394, 124 So.2d 261 (1960). USFG's attempt to distinguish that case from the instant case on the ground that, in the former, the damage occurred prior to completion of the contract is unconvincing. In both cases, there was a "continuous or repeated exposure to conditions" within the definition contained in the policy resulting in property damage. When the property damage began vis-a-vis the roof leaks, there was an occurrence under USFG's policy. As Bonitz is merely charged with negligence in installing the roof, there is no evidence that they either expected or intended the roof to start leaking. This satisfies the occurrence question under the USFG policy.
The same cannot be said for coverage under Employers' policy. When Employers *Page 572 
took over coverage in January, 1977, the roof had been leaking nearly four and one-half years. The term "accident" has been variously defined as something unforeseen, unexpected, or unusual. Employers Insurance Co. of Alabama v. Rives, 264 Ala. 310, 87 So.2d 653 (1955).
A case that is very instructive on this point is City ofCarter Lake v. Aetna Casualty Surety Co., 454 F. Supp. 47
(D.Neb. 1978). In that case, the city maintained a pumping system that was not adequate during flooding to control the flow of sewage, causing it to back up into people's homes. There the court held:
 "After the first incident of flooding, it was clear that the pump could become overloaded and automatically shut off. This, in turn, would cause the flooding in question. Carter Lake personnel knew exactly what would happen if the pump shut off and was not reset within four to six hours. However, the City chose not to remedy the situation at that time and cannot now be heard to claim that the floodings subsequent to the first occurrence were unexpected or unintended as required under the insurance policy in question. In view of the facts of this case, Iowa principles of interpretation and persuasive case law from other jurisdictions, it is the judgment of this court that if the question were presented to the Iowa Supreme Court, it would hold that the subsequent floodings do not fall within the definition of `accident' under the policy here."
In the instant case, even though Bonitz, through Vulcan Roofing Company, attempted for over four years to repair the roof, the roof continued to leak, and the real possibility existed that it would continue to leak each time it rained. Knowledge of this possibility increased every time the roof leaked in the four-year span before Employers' coverage commenced. Therefore, the damage that resulted when the possibility of leaks became a reality was not unusual, unexpected, or unforeseen and, therefore, not an accident. The absence of an accident necessarily precludes the existence of an occurrence under the Employers policy. Employers, therefore, has no duty to defend Bonitz in the action brought by the City of Midfield and also, of course, no liability for any judgment rendered in that action. Having so held, we need address the remaining issues only as they apply to coverage under the USFG policy.
USFG next argues that, if there was an occurrence, Bonitz breached the notice provisions of the policy by failing to report the occurrence to USFG until after suit was filed.
The policy provided the following condition with regard to notice:
 "4. Insured's Duties in the Event of Occurrence, Claim or Suit
 "(a) In the event of an occurrence, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable.
 "(b) If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative."
The requirement of notice "as soon as practicable" means that the insured must give notice "within a reasonable time under all the circumstances." See American Liberty Insurance Co. v.Soules, 288 Ala. 163, 258 So.2d 872 (1972). In making this determination, the only factors to be considered are the length of the delay in giving notice and the reasons therefor. Absence of prejudice to the insurer from the delay is not a factor to be considered. Southern Guaranty Insurance Co. v. Thomas,334 So.2d 879 (Ala. 1976).
Resolution of this question presents a question of fact to the trier of fact — the trial judge in this instance. If the insured offers evidence of mitigating circumstances, then conflicting inferences may be drawn *Page 573 
as to the reasonableness of the delay, and the question becomes one for the trier of fact. Southern Guaranty Insurance Co. v.Thomas, supra, at 882.
Such evidence was offered in the instant case. Hunter Price, president of Bonitz, testified that it was not unusual for leaks of this type to occur, that he was unaware of the extent of the problem, and that he thought that Vulcan Roofing Company was taking care of the problem. We find this testimony sufficient to raise conflicting inferences as to the reasonableness of the delay. As we stated in Pinson TruckEquipment Co., Inc. v. Gulf American Fire Casualty Co.,388 So.2d 955, 957 (Ala. 1980), "The question of whether delay is reasonable is a question of fact, and we recognize the presumption of correctness accorded ore tenus fact finding by the trial court."
Recognizing that presumption here, we do not disturb the trial court's apparent finding that the delay by Bonitz in giving notice of a potential claim to USFG was not unreasonable.
That leaves for our final consideration the effect on coverage of the so-called "work product exclusions" contained in the USFG policy. The applicable exclusions are as follows:
"Exclusions.
"This insurance does not apply:
 "(n) To property damage to the Named Insured's products arising out of such products or any part of such products;
 "(o) To property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts, or equipment furnished in connection therewith;
 "(p) To damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the Named Insured's products or work completed by or for the Named Insured or any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein."
The policy also contained an endorsement for completed operations hazards to include the risk of property damage from completed operations within the scope of coverage. Bonitz contends that the endorsement works to include damage to the roof within the coverage of the policy. We do not agree. The amended exclusion contained in the endorsement reads: "[This insurance does not apply] . . . (x) with respect to the completed operations hazard to property damage to work performed by the Named Insured arising out of the work, or any portion thereof, or out of materials, parts or equipment furnished in connection therewith."
We agree with USFG that the endorsement for completed operations hazard does not affect the exclusion from coverage of the products hazard. Since the roof is ultimately Bonitz's product in the sense that it is the end result of work performed by or on behalf of Bonitz, several of the exclusions apply to remove liability for damage to the roof itself from the coverage of the policy. See Aetna Insurance Co. v. PeteWilson Roofing Heating Co., Inc., 289 Ala. 719, 272 So.2d 232
(Ala. 1972). It is well settled in Alabama that, in the absence of statutory provisions to the contrary, insurance companies have the right to limit their liability and write policies with narrow coverage. Id., 272 So.2d at 235.
If damage to the roof itself were the only damage claimed by the City of Midfield, the exclusions would work to deny Bonitz any coverage under the USFG policy. The City of Midfield, however, also claims damage to ceilings, walls, carpets, and the gym floor. We think there can be no doubt that, if the occurrence or accident causes damage to some other property than the insured's product, the insured's liability for such damage becomes the liability of the insurer under the policy. See Employers Casualty Co. v. Brown-McKee, Inc., 430 S.W.2d 21
(Tex.Civ.App. 1968); Aetna Casualty Surety Co. v. Harvey W.Hottel, Inc., 289 F.2d 457 (D.C. Cir. 1961). *Page 574 
Finding coverage under the policy for damage to other property, we affirm the trial court's judgment that USFG owes Bonitz a duty to defend it in the action brought by the City of Midfield and to pay any judgment rendered against Bonitz in accordance with our above holding.
For the above reasons, the judgment appealed from is affirmed in part and reversed in part.
AFFIRMED IN PART; REVERSED IN PART.
TORBERT, C.J., and FAULKNER, JONES and BEATTY, JJ., concur.