BEATTY, Justice
(dissenting):
This appeal directly concerns only Os-walt’s contest of the general election. Os-walt’s separate contest of the primary runoff election remains pending in Fayette County circuit court.
The majority decides that the outcome of the general election contest is controlled by White v. Knight, Ala., 424 So.2d 566 (1982), which holds that the basic purpose of the relevant statutes is to get the names of certified candidates on the ballot for the general election.. The majority’s reliance on White v. Knight, however, is misplaced. That case involved inconsistent time requirements in different statutes, and we simply resolved the inconsistency in order to carry out the obvious legislative intent — to allow the general election to take place. In contrast to this case, White involved neither lack of certification of a candidate nor a conflict between the appeal process in contests and the holding of general elections within the time allowed, which is the dilemma seen by the majority here.
In this case the Democratic Party itself created its own dilemma by delaying action on the contest at two levels. First, after the contest was filed on September 30, the Fayette County committee declined to hear it and dismissed the contest on October 12. (The trial court so found as a matter of fact, and the majority does not justify any conclusion to the contrary, even if the question were considered one of law.) As a result, Oswalt was forced to appeal to the state committee merely to get a preliminary *46 factual hearing on his contest. When a contest is appealed, Code of 1975, § 17-16-82(b), requires hearing and determining the appeal between ten and twenty days after its filing. Since Oswalt filed his appeal with the state committee on October 14, that committee could have met to hear and determine the appeal at any time from October 25 to November 1 — which would have been before the election on November 2 and within the required statutory term of twenty days. Thus, the second opportunity for the Democratic Party to hear and resolve the contest occurred at this time. However, the state committee failed to use this opportunity, because Godfrey’s counsel stated that he would be unavailable until after the general election. The state committee could have required Godfrey to obtain new counsel if the present counsel was unwilling to adjust his schedule. By doing nothing, the state committee yielded the initiative to Godfrey’s lawyer instead of accepting their responsibility, and so lost a second opportunity to timely hear Oswalt’s contest.
Had the Democratic Party acted properly, Oswalt might have had the contest decided against him, and then appealed further to circuit court. In that event the conflict between the appeal process within the party and the holding of the general election, which is the dilemma the majority wants to avoid, would have materialized. Nothing of that sort happened in this case, however, and the majority thus cannot use such a fanciful dilemma to justify its speculative reading of the statutory requirements for certification. The majority’s refusal to consider anything other than “the full amount of time available to the various committees under the statutory provisions,” contradicts its own stated reliance on White v. Knight, supra, which specifically held:
“[WJhile the statutory time limitations serve as strict guidelines for the conduct of party officials in election contests as a general rule, nevertheless in instances like the present, when their conflicting observance would thwart the basic and underlying purpose of the pertinent statutes, which is to get the candidates certified and have their names placed on the November ballots, it is apparent that the legislature intended that the time limitations be directory only....” (Emphasis added.)
424 So.2d 569. The majority has by its questionable reasoning bootstrapped its way past the trial court’s factual finding that certification never took place before the general election.
Unfortunately, the majority opinion also neglects to consider Oswalt’s contest of the primary runoff now pending in Fayette County circuit court. One would think that the majority decision renders the primary contest moot. But the majority decision can be read as allowing that contest to proceed. If Oswalt loses, then the majority’s result would have the effect of allowing the election to stand as valid. But what if Oswalt wins his contest of the primary runoff? If that event occurs, shouldn’t the election be voided? The majority opinion is ambiguous on this question.
I realize that statutes on election contests are narrowly construed and that political parties are generally allowed by law to govern their own primaries. Even so, the legislature has enacted laws which seek to assure election contestants fair play, and in the framework of elections it is the narrow role of courts to see that the assurance of fair play is a reality. To carry out that mission Judge Beasley was specially appointed by this court to hear Oswalt’s contests of the two elections. Judge Beasley made factual findings that Godfrey was never properly certified and that the Democratic Party declined to hear Godfrey’s contest of the primary runoff. This Court has now violated its limited scope of review, ignored the trial court’s findings of fact, manufactured its own findings to solve a hypothetical dilemma, and thus rendered ineffectual the statutory scheme governing election contests. Apparently the majority sees no harm in abrogating statutory protections of the people’s right to elect leaders of their choice.
JONES and ADAMS, JJ., concur.
*47 ADAMS, Justice
(dissenting).
The majority is correct in saying that the difficulties arising in this case are the result of the recent changing of the holding of primary elections to the month of September. This greatly compressed the time frames in which political parties must perform deliberative activity. And the legislature has entrusted to the parties a huge responsibility to see that our election laws and democratic process are fairly carried out. They cannot take this responsibility lightly.
The. majority decision is, of necessity, one of expediency. It bows to the overall aim of getting the candidates certified in order that their names may be placed on the November ballots. White v. Knight, Ala., 424 So.2d 566 (1982). But in this case I think we give up too much. I can see no justification in the record for the State Democratic Executive Committee to schedule the appeal hearing of Oswalt after the November 2, 1982 general election. The suggestion that Perloff is applicable, and its mandate that if the party refuses to follow the mandate of the statutes the recourse of the contestant is to the courts, is in error. Contestant did resort to the courts at the only time that he had available to him under the law. To have attempted to do so before November 2 would have placed him directly in the teeth of the stout prescription of Code 1975, § 17-15-6:
No jurisdiction exists in or shall be exercised by any judge, court or officer exercising chancery powers to entertain any proceeding for ascertaining the legality, conduct or results of any election, except so far as authority to do so shall be specially and specifically enumerated and set down by statute; and any injunction, process or order from any judge, court or officer in the exercise of chancery powers, whereby the results of any election are sought to be inquired into, questioned or affected, or whereby any certificate of election is sought to be inquired into or questioned, save as may be specially and specifically enumerated and set down by statute, shall be null and void and shall not be enforced by any officer or obeyed by any person; and should any judge or other officer hereafter undertake to fine or in any wise deal with any person for disobeying any such prohibited injunction, process or order, such attempt shall be null and void, and an appeal shall lie forthwith therefrom to the supreme court then sitting, or next to sit, without bond, and such proceedings shall be suspended by force of such appeal. ... [Emphasis added.]
Under the unique circumstances of this case, I would hold that the consideration of getting the candidate’s name on the ballot for the November election, which the majority has treated as overriding, must yield to the equally important consideration that the contestant be afforded fairness and justice.