Two separate appeals were filed, one by William and Mary Berry, and the other by Gordon Gilbreath and Nolan Couch, from the Madison County Circuit Court's entry of summary judgment in favor of South Carolina Insurance Co., Inc., in its suit for declaratory relief against all appellants. We affirm.
On December 12, 1983, William Berry and his wife Mary Berry entered into a contract with Gordon Gilbreath and Nolan Couch, d/b/a Gilbreath Couch Construction Company and Home Repair, wherein Gilbreath and Couch agreed to construct an addition to the Berrys' home and to install thermal pane windows in the existing structure. In late January or early February 1984, Gilbreath and Couch were informed that they could no longer work on the house because the work they had already completed did not pass an inspection conducted by the City of Huntsville Inspection Department, and, therefore, a new contractor's license and building permit had to be obtained before work on the home could *Page 512 
continue. Gilbreath and Couch agreed to get the license if the Berrys would take care of the permit, but the Berrys refused, and Gilbreath and Couch were unable to procure the license. As a result, the construction on the addition and the improvements to the house ceased and remain uncompleted.
The Berrys filed suit against Gilbreath and Couch, alleging breach of contract, misrepresentation, and breach of warranty. This prompted Gilbreath and Couch to call upon their comprehensive general liability insurance carrier, South Carolina Insurance Company, Inc., to provide a defense to the suit. South Carolina Insurance Company then filed suit seeking declaratory relief in the Circuit Court of Madison County. Based upon the pleadings and depositions taken, the court entered summary judgment in favor of South Carolina Insurance Company, stating that there was no coverage under the policy for the damages alleged or the claims stated by the Berrys against Gilbreath and Couch, and further, that there was no obligation under the policy to defend Gilbreath and Couch in the aforementioned suit. On November 30, 1984, William and Mary Berry appealed to this Court from the summary judgment, and Gilbreath and Couch appealed five weeks later. The cases were consolidated for our review, with the dispositive issue being whether the policy issued to Gilbreath and Couch by South Carolina Insurance Company obligates the company to provide a defense, and, if the defense fails, to pay a judgment entered against Gilbreath and Couch in the suit brought against them by William and Mary Berry.
In order for summary judgment to be proper, the trial court must conclude that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. Silk v. Merrill Lynch, Pierce, Fenner Smith,437 So.2d 112 (Ala. 1983). Furthermore, summary judgment may not be granted if there is a scintilla of evidence supporting the non-movant's position. Fountain v. Phillips, 404 So.2d 614
(Ala. 1981).
The Berrys rely on United States Fidelity Guaranty Companyv. Bonitz Insulation Company of Alabama, 424 So.2d 569 (Ala. 1982), as authority for their position that there was an "occurrence" which caused "property damage" in this case. Therefore, they say that South Carolina Insurance Company was obligated to defend them and pay a judgment if the defense failed. In Bonitz, the property owner sued the contractor for negligent installation of a roof. The roof was installed on a gym in 1972, and leaked numerous times over the next several years, causing a great deal of water damage to the gym. The definition of an "occurrence" in the insurance policy in Bonitz
was identical to that in the policy before us, namely: "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." In Bonitz, we opined:
 [Here], there was a "continuous or repeated exposure to conditions" within the definition contained in the policy resulting in property damage. When the property damage began vis-a-vis the roof leaks, there was an occurrence under USF G's policy.
424 So.2d 569 at 571. This Court went on to say:
 If damage to the roof itself were the only damage claimed by the city of Midfield, the exclusions would work to deny Bonitz any coverage under the USF G policy. The City of Midfield, however, also claims damage to ceilings, walls, carpets, and the gym floor. We think there can be no doubt that, if the occurrence or accident causes damage to some other
property than the insured's product, the insured's liability for such damage becomes the liability of the insurer under the policy. [Citations omitted].
Id., at 573.
In the case at bar, there is not even a scintilla of evidence to support the Berrys' assertion that an occurrence leading to property damage took place. On the contrary, *Page 513 
the deposition of Mary Berry reveals the following at pp. 24-25:
Q. They had the complete roof on there?
A. Yes. And it was supposedly finished.
Q. And what happened?
A. It started leaking.
Q. What date was this?
A. I don't remember what day that was.
Q. What is your best estimate of what date it was?
A. I would say the first part of January.
Q. New Year's Day?
 A. Oh, no. Like I would say maybe the first week or so of January.
Q. And what kind of damage was caused by that leak?
 A. At the time no damage, because I caught it and was putting water buckets under it and emptying it.
Q. Was it repaired?
 A. No. They took and — they said they couldn't work on it until it quit raining enough. So, they took and put, I believe there was a roll of felt up there and some plastic, and they put some pallets up there to hold it down, and that's the way it is. [Emphasis added.]
There is nothing in the deposition of Mary Berry or William Berry that alleges any damage to the existing structure as a result of "an accident, including continuous or repeated exposure to conditions. . . ." Rather, all of the "damages" are related to the work done pursuant to the contract. The insurance policy specifically addresses this type of damage in its "work product exclusion," which states:
 This insurance policy does not apply to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.
For all of the above-stated reasons, the judgment of the trial court is hereby affirmed.
AFFIRMED.
TORBERT, C.J., FAULKNER, ALMON and EMBRY, JJ., concur.