United States Fidelity and Guaranty Company ("USFG"), the defendant in a declaratory-judgment action, appeals from a summary judgment entered in favor of the plaintiffs Baldwin County Home Builders Association, Inc. ("BCHBA"), and L.M. Smith ("Smith"). We reverse and remand.
BCHBA and Smith sued for a judgment declaring that USFG was obligated to defend and/or indemnify BCHBA and Smith with regard to an action that had been brought against them by Robert Crowe and Rowena Crowe.
On or about January 10, 1994, the Crowes purchased a new house from BCHBA. The house, located at 21940 Country Woods Drive in Fairhope, had been constructed by L.M. Smith Construction Company, Inc., of which Smith was president. Smith was also an officer of BCHBA. Shortly after moving into the house, the Crowes began experiencing drainage problems in the yard. Specifically, water tended to collect and form a pool at the base of an oak tree in the southwest corner of the lot. The house was served by a septic tank, and the tree was located at the edge of the soil fill covering the septic tank. Eventually, the water would flow from that pool into the street. Robert Crowe ("Crowe") informed Smith of this alleged problem with seepage from the septic tank or its field lines, and of other problems, in the early part of 1994. *Page 73 
Smith referred Crowe to John Barr of Heaton Septic Tank Services, the subcontractor that had installed the Crowes' septic tank. Barr came to the property and looked at the problem. Following Barr's visit, Crowe wrote a letter to Barr, proposing various ways to correct the drainage problem. Barr took no action. On January 13, 1995, Crowe sent Smith a letter stating that something had to be done to correct the seepage from the septic-tank field lines and that the Crowes expected the homebuilder's warranty to cover any necessary repairs. The letter stated:
 "The [principal] issue concerns the seepage from the septic field in the front yard of our residence. I am also enclosing a copy of the letter previously written to your subcontractor, Heaton Septic Tank Services at Bay Minette, Alabama which generally describes the problem and the prescribed corrective actions. [Inasmuch] as the work was identified many months ago and despite numerous attempts to resolve the matter, no actions were taken, I am advising you of my intention to seek an independent solution to the problem. When satisfactory corrective actions have been completed, I will forward to you for payment, a detailed invoice for the services rendered.
". . . .
 "We look forward to resolving these issues. This home is absolutely beautiful, the work of a true artisan. We have enjoyed and we expect to continue to enjoy our lives in this wonderfully livable home."
(C. 210.)
On January 16, 1995, Smith responded by a letter to Crowe, stating that he had informed Heaton Septic Tank Services about Crowe's proposed corrections. In the letter, Smith volunteered to contact the designer of the septic-tank system, Seth Moore, of Moore Engineering Company. The Crowes heard nothing further from Smith, Heaton Septic Tank Services, or Moore Engineering Company. On March 18, 1995, Crowe sent Smith another letter requesting correction of the septic-tank seepage problem. In this letter, Crowe stated that he was prepared to take corrective action, but that he was still willing to work with Smith's subcontractor. In the closing paragraphs of the letter, he wrote:
 "Please understand that for months I have sought an amicable solution because I am not a litigious individual. Nevertheless, I have the resolve to find the end of this matter.
 "Finally, I wish to once again tell you of the pleasure my family and I feel to be living in this beautiful and wonderfully livable home. I look forward to hearing from you."
(C. 212.)
Crowe sent another letter to Smith on May 29, 1995. In this letter, Crowe advised Smith that he had taken corrective action and requested reimbursement for $498.31 he said he had spent on the project. However, on June 6, 1995, Smith responded with a letter stating that the problem had been misdiagnosed as a septic-tank problem. He stated that Moore Engineering Company and the Baldwin County Health Department had conducted an investigation and had found the problem to be related to the underground water table. Smith then referred the matter to BCHBA. The Crowes filed a claim with BCHBA for reimbursement for the drainage repairs. In June 1995, BCHBA refused to reimburse Crowe because, it said, damage caused by subsurface water was not covered by the Crowes' homebuilder's warranty. In January 1996, the Crowes sued BCHBA and Smith, seeking damages based on claims of negligence, breach of contract, fraud, and civil conspiracy.
BCHBA and Smith were insured under a general commercial liability policy issued by USFG.[1] On January 18, 1996, *Page 74 
BCHBA notified USFG of the Crowes' lawsuit. However, USFG denied coverage, stating that it had not received timely notice of the claim. USFG also denied coverage on the breach-of-contract claim, the fraud claim, and the negligence claim (alleging negligent design and/or installation) on the basis that the USFG policy provided no coverage for liability based on such claims.
BCHBA and Smith sued for a judgment declaring that USFG was obligated to defend them against the Crowes' claims. BCHBA, Smith, and USFG filed motions for summary judgment. On October 20, 1998, the trial court entered a summary judgment in favor of BCHBA and Smith, declaring that USFG was liable to defend them in the Crowes' action. On November 30, 1998, USFG appealed.
We review a summary judgment de novo.
 "In reviewing the disposition of a motion for summary judgment, `we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was `entitled to a judgment as a matter of law,' Wright v. Wright, 654 So.2d 542 (Ala. 1995); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359
(Ala. 1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990)."
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala. 1997).
In reviewing the summary judgment, we must first examine the applicable portions of the USFG insurance policy. Section IV of the policy contains these notification provisions:
"2. Duties In The Event of Occurrence, Claim Or Suit.
 "a. You must see to it that we are notified as soon as practicable of an `occurrence' or an offense which may result in a claim. Notice should include:
 "(1) How, when and where the `occurrence' or offense took place;
 "(2) The names and addresses of any injured persons and witnesses; and
 "(3) The nature and location of any injury or damage arising out of the `occurrence' or offense.
 "b. If a claim is made or `suit' is brought against any insured, you must:
 "(1) Immediately record the specifics of the claim or `suit' and the date received; and
"(2) Notify us as soon as practicable.
 "You must see to it that we receive written notice of the claim or `suit' as soon as practicable."
(C. 227.)
The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." However, the policy does not state what constitutes "an offense which may result in a claim," or what constitutes a "claim."
This Court has held that the negligent installation of a roof on a school gymnasium, which caused leaks and ultimately property damage, was an "occurrence" within the meaning of another USFG *Page 75 
policy. United States Fidelity Guar. Co. v. Bonitz Insulation Co.,424 So.2d 569 (Ala. 1982). The USFG policy in Bonitz Insulation defined "occurrence" as "`an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured." Id. at 571. Although the definition in the Bonitz Insulation policy is slightly different from the definition in the policy in this present case, we note that the first portion of the two definitions is the same. In BonitzInsulation, other parts of the gymnasium suffered water damage. This Court stated:
 "In [this] case, there was a `continuous or repeated exposure to conditions' within the definition contained in the policy resulting in property damage. When the property damage began vis-a-vis the roof leaks, there was an occurrence under USFG's policy."
Id.
In the case before us, the trial court did not indicate whether or when an "occurrence" had taken place or whether or when a "claim" was made. It simply stated on its docket sheet that a summary judgment was entered in favor of the plaintiffs and against USFG.
If an "occurrence" takes place, or a "claim" is made, or a "suit" is filed, the policy requires that the insured give USFG notice "as soon as practicable." This Court has held:
 "The requirement of notice `as soon as practicable' means that the insured must give notice `within a reasonable time under all the circumstances.' See American Liberty Insurance Co. v. Soules, 288 Ala. 163, 258 So.2d 872 (1972). In making this determination, the only factors to be considered are the length of the delay in giving notice and the reasons therefor. Absence of prejudice to the insurer from the delay is not a factor to be considered. Southern Guaranty Insurance Co. v. Thomas, 334 So.2d 879 (Ala. 1976)."
Bonitz Insulation, 424 So.2d at 572. In Thomas, cited by this Court inBonitz Insulation, this Court stated:
 "Where facts are disputed or where conflicting inferences may reasonably be drawn from the evidence, the question of the reasonableness of a delay in giving notice is a question . . . for the [trier of fact]. Provident Life Accident Ins. Co. v. Heidelberg, 228 Ala. 682, 154 So. 809 ([Ala.] 1934). Conflicting inferences concerning the reasonableness of a delay may sometimes be drawn where the insured offers evidence of mitigating circumstances.
 "`However, where an insured fails to show a reasonable excuse or the existence of circumstances which would justify a protracted delay, the Court should as a matter of law hold that there has been a breach of the condition as to notice. . . .'
 "Zurich General Accident Liability Insurance Co. v. Harbil Restaurant, Inc., 7 A.D.2d 433, 435, 184 N.Y.S.2d 51, 53 (1959)."
Thomas, 334 So.2d 879, 882-83. Thus, the determination of the fundamental issue, whether notice of the occurrence or claim was given to the insurer within a reasonable time, rests on the reasonableness of the delay. BCHBA and Smith offered an excuse for their delay in giving notice to USFG; therefore, the question is whether the excuse they offered was reasonable. If conflicting inferences can be drawn from the evidence, the question of reasonableness is submitted to the trier of fact. If the facts are undisputed, however, and the insured does not show justification for the protracted delay, the court may find the delay unreasonable as a matter of law. Thomas, 334 So.2d at 883; BonitzInsulation, 424 So.2d at 572-73.
In Bonitz Insulation, this Court held that an insured's five-year delay in notifying its insurer of an "occurrence," a delay based on the insured's believing that the subcontractor was repairing the leaking *Page 76 
roof, was reasonable. Thus, USFG owed Bonitz a duty to defend it against the claims made by the City of Midfield. Although this Court stated that a contractor's belief that a subcontractor was correcting the problem "raise[d] conflicting inferences as to the reasonableness of the delay," 424 So.2d at 573, it affirmed the trial court's judgment holding that the delay was reasonable, because the trial court's decision was based on ore tenus evidence.[2]
Although Smith referred Crowe to the subcontractors, Heaton Septic Tank Services and Moore Engineering, Smith remained in constant contact with the subcontractors, and Smith was probably aware that the subcontractors were not correcting the seepage problem at the Crowe residence. In Crowe's letter to Smith dated January 13, 1995, Smith was told that Heaton Septic Tank Services had taken no action. Smith testified that he and BCHBA did not notify USFG until after the lawsuit had been filed because, they say, they had believed until then that the problem could be "worked out." BCHBA and Smith argued that because Crowe did not respond to Smith's June 6 letter informing Crowe that the problem would not be covered under his homebuilder's warranty, BCHBA and Smith considered the issue resolved.
BCHBA and Smith also argue that the letters from Crowe to Smith did not indicate that the Crowes would sue. USFG claims that the letters did, in fact, notify Smith that the Crowes intended to sue. BCHBA and Smith also argue that notice to USFG was not required, because, they say, they were not liable for the alleged injury to the Crowes; they say they were not liable because, they argue, the drainage problem was not covered under the homebuilder's warranty. BCHBA and Smith offered mitigating circumstances, leading to conflicting inferences concerning the reasonableness of the delay; their excuses could be found to justify the protracted delay. Thus, the matter should be resolved by the trier of fact.
Given these circumstances, the trial court improperly entered the summary judgment in favor of BCHBA and Smith. Accordingly, that judgment is reversed, and, because BCHBA and Smith offered mitigating circumstances, the question of the reasonableness of their delay in giving notice is a question for the trier of fact.
REVERSED AND REMANDED.
Hooper, C.J., and Maddox, Houston, See, Lyons, Johnstone, and England, JJ., concur.
[1] The parties did not dispute Smith's coverage under BCHBA's policy with USFG.
[2] Because the trial court in Bonitz Insulation heard ore tenus evidence, this Court presumed that the trial court's findings of fact were correct. However, in this present case, we are reviewing a summary judgment by a de novo standard of review.