PER CURIAM.
Aetna Life Insurance Company of Hartford, Connecticut, and Goodyear Tire & Rubber Company (“Goodyear”) appealed to this Court from a judgment entered by the trial court after a bench trial on count I of a two-count complaint filed by James M. Character.[1] We reverse and remand.
Aetna U.S. Healthcare and Goodyear were the only named defendants in Character’s complaint. Goodyear and “Aetna Life Insurance Company” answered the complaint. After a hearing before the trial court at which ore tenus evidence was presented, the trial court, on February 19, 2002, entered a judgment on count I against only Aetna U.S. Healthcare. Count II was severed from count I, and on September 27, 2002, the trial court certi *1076 fied its judgment on count I as final, pursuant to Rule 54(b), Ala. R.App. P.
The trial court’s judgment against Aetna U.S. Healthcare awarded Character $52,975 in long-term disability benefits and $25,380.34 in prejudgment interest. Aetna Life Insurance Company, but not Aetna U.S. Healthcare, filed a notice of appeal on October 11, 2002. After inquiry to the trial court by this Court as to whether Aetna Life Insurance Company had standing to appeal a judgment against Aetna U.S. Healthcare, the trial court, which had filed an amended order on April 2, 2003, entered the following amended order on April 9, 2003:
“The Order of April 2, 2003, is hereby amended by substituting Aetna Life Insurance Company for the name Aetna U.S. Healthcare. The amended Order states as follows:
“Originally a complaint was filed by James M. Character for benefits against Goodyear Tire & Rubber Company and Aetna [U.S. Healthcare], At trial, the parties stipulated that the claim for benefits was against Aetna Life Insurance Company pursuant to an insurance contract issued by Aetna Life Insurance Company. The judgment in favor of Plaintiff was rendered against Aetna Life Insurance Company. The Court failed to dismiss Goodyear Tire & Rubber Company without prejudice as a matter of record even though the parties so stipulated.
“The Court hereby acknowledges the oral Stipulation of the Parties and dismisses the claims in Count I against Goodyear Tire & Rubber Company without prejudice.
“The following judgment against Aet-na Life Insurance Company in Count I as issued by this Court on February 19, 2002, is restated as follows:
“ ‘The Court finds that Aetna Life Insurance Company incorrectly denied Long Term Disability Benefits to James M. Character. Mr. Character is entitled to Long Term Disability Benefits from Defendant Aetna beginning October 1996 to the present time and until age 65 provided he meets the eligibility requirements. Review of the [administrative decision to deny benefits is under the de novo standard of review. The parties agreed that the de novo standard of review applies. Under de novo review, no deference is given to the [administrative [d]ecision. Firestone Tire & Rubber Company v. [Bruch, 489 U.S. 101,] 109 S.Ct. 948 (1989). In Ramsey v. Hercules Inc., 77 F.3d 199, 204[-05] (11th Cir.1996), the [United States Court of Appeals for the Eleventh] Circuit applied the holding of Firestone to factual determinations about long term disability claims. [Character] is entitled to 18% interest on past due benefits pursuant to [Ala.Code 1975, § 27-1-17]. Jordan v. Reliable Life Ins. Co., 589 So.2d 699 (Ala.1991).’
“The judgment for interest against Aetna Life Insurance Company on Count I as issued on September 25, 2002, is restated as follows:
“ ‘Based on the submissions of the parties, the Court awards [Character] $25,380.34 in prejudgment interest as of February [19], 2002, with interest being calculated from 1/1/97 to 2/19/02 at 18%.
“ ‘The Court’s Order of 2/19/02 is amended to include a judgment of $25,380.34 in favor of [Character] and against Defendant Aetna.’
“On September 27, 2002, this Court denied [Character’s] Motion for Attorney Fees and Costs against Aetna Life *1077 Insurance Company. Upon Motion for Reconsideration, [Character’s] Motion was again denied on October 28, 2002. Because the Court severed the claims in Count II against Goodyear from the claims in Count I against Aetna Life Insurance Company, the Court’s Order of September 27, 2002, was intended as a final order regarding the claims against Aetna Life Insurance Company. For trial purposes the Court had dismissed the claims in Count I without prejudice against Goodyear, but failed to dismiss the claims as a matter of record.
“All claims against Aetna Life Insurance Company have been finally adjudicated. The claims against Goodyear Tire & Rubber Company as stated in Count II have been severed by this Court and stayed pending a final adjudication of the appeal of the judgment of Count I. There is no reason to delay a final judgment regarding the claims of Count I against Aetna Life Insurance Company. Pursuant to Rule 54(b) of the Alabama Rules of Civil Procedure, the judgment against Aetna Life Insurance Company is a final judgment.
“This the 9th day of April, 2003.”
The trial court, on the basis of a stipulation during trial that the correct name of the defendant Aetna U.S. Healthcare is Aetna Life Insurance Company, has corrected its judgment to describe that defendant as Aetna Life Insurance Company. While the stipulation is not of record, Character has not challenged the accuracy of the trial court’s statement nor has Character attacked the amended judgment as exceeding the scope of the trial court’s authority.
Rule 60(a), Ala. R. Civ. P., provides:
“(a) Clerical Mistakes. Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal or thereafter, such mistakes may be so corrected by the trial court. Whenever necessary a transcript of the record as corrected may be certified to the appellate court in response to a writ of certiorari or like writ.”
(Emphasis added.) Under the circumstances here presented we treat the trial court’s amendment of the judgment while this appeal was pending as a nunc pro tunc correction of the judgment. Consequently, the notice of appeal filed in the name of Aetna Life Insurance Company (“Aetna”) is sufficient to invoke this Court’s appellate jurisdiction.
Aetna presents two issues for review by this Court:
“I. Whether the trial court erred in awarding Character long-term disability benefits given the fact that [Character] was fully capable of performing a reasonable occupation as defined by the long-term disability plan.
“II. Whether the trial court erred in failing to set off Character’s other income benefits pursuant to the applicable long-term disability plan.”
Because of our resolution of the first issue, we do not address the second issue.
Character worked for Goodyear for many years. While he was employed, he was covered under a long-term disability (“LTD”) plan entered into between Goodyear and Aetna; the issue date of the plan was February 1, 1995, and the effective date was January 1, 1993. All full-time salaried employees of Goodyear were eligible to participate in the LTD plan. Character chose to take part in the LTD plan, which would pay him 70% of his basic *1078 salary if, while he was employed by Goodyear, he became totally disabled (as that term is defined in the LTD plan) and remained totally disabled for more than 12 months. Character last worked for Goodyear in September 1995. Because of deteriorating health, Character quit working, and Goodyear paid Character 80% of his basic salary through October 1, 1996, as short-term disability benefits. Character contends, and the trial court found, that Character was totally disabled, as that term is defined in the plan, and that he had been totally disabled for 12 months prior to October 1,1996.
The parties agree[2] that the following is the definition of total disability that is used in the LTD plan:
“You are deemed to be totally disabled during the 12 month waiting period and thereafter if you are not able, solely because of injury or disease, to work at any reasonable occupation. (This is any gainful activity for which you are, or may reasonably become, fitted by education, training or experience, and in which other people of similar background are actually employed as their principal means of support.)”
In Altiere v. Blue Cross & Blue Shield of Alabama, 551 So.2d 290, 292 (Ala.1989), this Court stated:
“Courts are not at liberty to rewrite policies to provide coverage not intended by the parties. Newman v. St. Paul Fire & Marine Insurance Co., 456 So.2d 40 (Ala.1984). In the absence of a statutory provision to the contrary, insurance companies have the right to limit their liability and to write policies with narrow coverage. United States Fidelity & Guaranty Co. v. Bonitz Insulation Co., 424 So.2d 569 (Ala.1982).”
No party has cited any statutory provision that would prohibit Aetna from limiting the definition of “total disability” to the definition of that phrase contained in the LTD plan. Independent research has failed to locate any such statutory limitation.
Character testified that before the issue date of the LTD plan, he had attended three years of college, had obtained a real estate license, and had an insurance sales license. He indicated that he owned 50% of a used car dealership; that he owned and managed real property; and that he engaged in other entrepreneurial enterprises. Character said that he was born on August 14, 1945, and that he intended to stop working at Goodyear in 1995, because his goal “from the time [he] was a little, bitty boy was to retire at age 50.” Character filed his disability-claim notice with Goodyear on July 23,1996.
At trial, the following exchange occurred between Character and his attorney:
“Q. [Character’s attorney:] During 1996, could you have worked a light, sedentary job on a regular basis five days a week, an eight-hour day, in your opinion? On a regular basis, sustained basis?
“A. [Character:] In a layman’s term, would you tell me what that sedentary job is? What is a sedentary job?
“Q. A desk job, where you don’t— there’s not much physical exertion. It’s a desk job, where you don’t have to exert yourself, pretty much, physically?
“A. That would have had no effect. No, sir. In my opinion, no.
“Q. Why not, in your opinion?
*1079 “A. My vascular condition is deteriorating my entire body. My legs, my heart, my aorta, you name it.
“Q. Okay.
“A. The leg condition is a vascular condition. It was the straw that broke the camel’s back. But my entire body— My entire vascular body is deteriorating.”
In 1996, an administrative law judge for the Social Security Administration denied Character’s application for Social Security disability benefits. Character suffered an acute myocardial infarction in January 1998 and was hospitalized. On July 18, 1998, an administrative law judge for the Social Security Administration found that Character had been under a “disability,” as defined by the Social Security Act and the regulations promulgated pursuant to that act, since September 15, 1995, and that based upon the “combined effects of his impairments,” his residual-function capacity, and vocational factors, no jobs that Character could perform existed in significant numbers.
Character last worked for Goodyear on September 3, 1995; he received 80% of his basic salary from Goodyear through October 1, 1996. The fact that Goodyear paid Character, even though Character was not working for Goodyear, may be evidence indicating that Character could not perform the duties he had been employed to perform for Goodyear; however, this evidence does not indicate that Character, solely because of injury or disease, was totally disabled and not able to work at any reasonable occupation, as that phrase is defined in the LTD plan.
Character argues that proper weight should have been given to the opinion of his treating physicians in considering whether Character was totally disabled for purposes of the LTD plan. We agree. However, we cannot find any opinion by Character’s treating physicians that supports Character’s claim that he was totally disabled before October 1, 1996, as the phrase “total disability” is defined under the LTD plan. Character’s primary physician before October 1, 1996, assigned Character no limitations and no restrictions on what he could do. No physician told Character, Aetna, or the trial court, orally or in writing, that Character was incapable of working at any reasonable occupation or that he was not able to manage his various companies, which included Coosa Kars, Rainbow Finance, JAST, Inc., and Executive Sales & Leasing.
The trial court’s judgment is incongruous with the following undisputed evidence.
During 1995-1996, Character bought out his partner in Coosa Kars and began an expansion of that business that included hiring Evan Edge, expanding the lot to include Executive Sales & Leasing, acquiring dealer financing, and expanding the business into Florida. Character was the president of Coosa Kars, and he signed any necessary paperwork, funded purchases, made various business decisions, attended auto auctions, and picked up cars. During this time, he increased Coosa Kars’ used car inventory from $80,000 to $400,000. He was generally involved in day-to-day activities of Coosa Kars. He received $3,000 a month in rent from Coo-sa Kars, an annual salary of $11,068, and he indicated on his federal tax return that he devoted 100% of his time to the business of Coosa Kars. During this time, Character was not hospitalized; he was involved in a partnership that purchased and managed rental properties, including three office buildings in Alabama and Georgia; he made, collected, and managed loans through JAST, Inc., one of his corporations; he walked two miles a day; and he drove back and forth between Sarasota, Florida, and Gadsden, Alabama.
*1080 In this case, it is difficult to “suit the action to the word, the word to the action,”[3] because what Character said he could not do and what in 1998 a Social Security administrative law- judge found that he could not do in September 1995, Character was, in fact, on and before October 1, 1996, doing. He was engaging in “gainful activities] ... in which other people of similar background are actually employed as their principal means of support.”
When a trial court hears ore ten-us testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust. Philpot v. State, 843 So.2d 122 (Ala.2002). Only Character’s opinion as to what he thought he could and could not do or what an administrative law judge thought he could and could not do is disputed, and those opinions were contradicted by undisputed facts as to ■ what Character was in fact doing. The ore tenus rule does not apply to cases involving undisputed facts, because undisputed facts trump disputed opinions, and our review in such a case is de novo. Philpot, 843 So.2d at 125.
Therefore, we reverse the judgment of the trial court and remand the case for proceedings consistent with this opinion. Because of our resolution of the first issue, it is not necessary to address the second issue Aetna raises on appeal.
REVERSED AND REMANDED.
HOUSTON, LYONS, BROWN, JOHNSTONE, and WOODALL, JJ., concur.

. Goodyear is no longer a party to this appeal.

. See pages 23-24 of Character's brief to this Court and page 18 of the initial brief filed in this Court by Goodyear and Aetna.

. William Shakespeare, Hamlet, act 3, sc. 2.