On Application for Rehearing Following Opinion on Return to Remand

STUART, Justice.
The opinion of June 29, 2012, is withdrawn, and the following is substituted therefor.
Town & Country Property, L.L.C., and Town & Country Ford, L.L.C. (hereinafter collectively referred to as “T & C”), appealed the summary judgment entered by the Jefferson Circuit Court in favor of Amerisure Insurance Company and Am-erisure Mutual Insurance Company (hereinafter collectively referred to as “Ameri-sure”) holding that Amerisure was not obligated to pay a $650,100 judgment entered on a jury verdict in favor of T & C and against Amerisure’s insured, Jones-Williams Construction Company, because, the trial court reasoned, the faulty construction of the T & C facility upon which the judgment was based was not an “occurrence” covered under the commercial general-liability (“CGL”) insurance policy Amerisure had issued Jones-Williams. On October 21, 2011, we affirmed in part the judgment entered by the trial court, agreeing that faulty construction did not in and of itself constitute an occurrence for CGL-policy purposes and that, accordingly, “Amerisure was not required to indemnify Jones-Williams for the judgment entered against it insofar as the damages represented the costs of repairing or replacing the faulty work.” Town & Country Prop., L.L.C. v. Amerisure Ins. Co., 111 So.3d 699, 706 (Ala.2011) (“Town & Country I”). However, we further recognized in Town & Country I that if damages had been awarded T & C to compensate it for damage the faulty construction later caused to personal property or some otherwise nondefective portion of the T & C property, then “[tjhat damage would constitute ‘property damage’ resulting from an ‘occurrence,’ and it *709 would be covered under the terms of the Amerisure policy....” 111 So.3d at 708. See also United States Fid. & Guar. Co. v. Bonitz Insulation Co. of Alabama, 424 So.2d 569, 573 (Ala.1982) (“If damage to the roof itself were the only damage claimed by the [plaintiff], the exclusions would work to deny [the roofing contractor] any coverage under the [CGL] policy. The [plaintiff], however, also claims damage to ceilings, walls, carpets, and the gym floor. We think there can be no doubt that, if the occurrence or accident causes damage to some other property than the insured’s product, the insured’s liability for such damage becomes the liability of the insurer under the policy.”). Accordingly, we remanded the case for the trial court to review the record and to determine if any portion of the awarded damages could be justified on that basis.
On remand, the parties filed briefs with the trial court taking predictable positions: T & C argued that the vast majority of the $650,100 judgment should be attributed to covered damage, while Amerisure argued that the damages T & C sought for the repair and/or replacement of defective construction exceeded the amount of the verdict and thus none of the judgment should be attributed to covered damage to personal property or other portions of the T & C property. In its order resolving the issue on remand, the trial court identified $257,500 in damages claimed by T & C at trial as representing the repair or replacement of faulty construction. It therefore subtracted that amount from the $650,100 awarded by the jury and awarded T & C $392,600, plus interest and costs.
Upon a review of the record, it is evident that the $392,600 judgment entered by the trial court is not supported by the evidence. In its brief on return to remand, T & C argues that the trial court’s judgment entered on remand is justified as follows:
“The record evidence showed that— because of the faulty construction — water would leak into the building through doors, windows, walls, and floors. In addition, the parking lot, retaining wall, and other areas of the building suffered damage from settlement and erosion. Consequently, the water intrusion, settlement, and erosion caused extensive damage to several parts of the structure and to items that were otherwise sound.[4]
T & C’s brief on return to remand, pp. 6-7 (citations to record omitted). However, it is apparent that much of the damage itemized by T & C in this regard is itself faulty workmanship for which Amerisure is not obligated to indemnify Jones-Williams. Moreover, although there was testimony indicating that carpet, computers, furnishings, and certain fixtures were also damaged — which damage might be attributable to an occurrence and thus be covered under the CGL policy — no evidence was presented of the cost required to repair that damage, and, accordingly, no portion of the awarded damages may be considered com *710 pensation for that damage.[1] See Parsons v. Aaron, 849 So.2d 932, 949 (Ala.2002) (“[D]amages may not be awarded where they are remote or speculative. A jury must have some reasonable basis for the amount of its award.”).
In Town & Country I, we held that the cost of repairing faulty or defective construction itself was not covered by the terms of the CGL policy. With one minor exception discussed below, our review of the materials submitted to the trial court in the present case indicates that no evidence was introduced in the underlying trial as to the cost of repairing anything other than the defective construction itself. To the contrary, the only evidence as to the monetary amount of any damage suffered by the insured was the testimony of T & C’s own construction-defect expert who testified in the underlying trial that it would cost $751,346 to repair or replace the defective work at issue. Moreover, T & C’s argument to the jury in the underlying trial was that this amount was the amount the jury should award in damages. The jury awarded just over $650,000 in damages.
The only evidence of specific property damage caused by an occurrence identified by either the parties or the trial court and accompanied by evidence of a specific cost associated with repairing or replacing that damage concerns certain ceiling tiles. Amerisure concedes that there was testimony that nondefective ceiling tiles damaged by roof leaks had to be replaced at a cost of $600. The damage to the ceiling tiles is property damage caused by an occurrence, and, accordingly, T & C is entitled to damages in the amount of $600. The judgment entered by the trial court on remand is accordingly reversed, and the cause is again remanded for the trial court to enter a final judgment in favor of T & C for $600.
APPLICATION FOR REHEARING OVERRULED; OPINION OF JUNE 29, 2012, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
MALONE, C.J., and WOODALL, BOLIN, PARKER, SHAW, MAIN, and WISE, JJ., concur.
MURDOCK, J., concurs specially.

“4 These intrusions caused damage to floors, floor coatings, walls, carpet, hallways, furniture, computers, ceiling tiles, insulation, the electrical box, paint of interior and exteri- or walls, and caused foul odors and stains. Soil settlement and erosion caused by water infiltration have caused widespread damage throughout the T & C facility, causing floor cracks and peeling in the showroom, the parts and service department, the lobby, 'alligator cracks’ to the vehicle display pad, and failure of the outer retaining walls. The floors in some areas of the building have become ‘mushy’ because of the repeated water intrusion caused by faulty construction, and are arguably unstable. Wind and storm damage caused cracks to the building structure itself."

. It appears that T & C did not focus on proving this property damage at trial, instead emphasizing the larger amount of damages it sought to repair and/or replace the faulty construction that led to the damaged furnishings, etc. See Town & Country I, 111 So.3d at 706-07 n. 5 ("Amerisure acknowledges that there was some testimony at the trial of T & C's action against Jones-Williams regarding damaged furnishings but states that T & C’s counsel did not ask the jury for any damages related to those claims, instead asking for an award equal to the amount T & C’s expert testified it would take to replace and repair the faulty work.”).