220 So.2d 884

**FIDELITY AND CASUALTY COMPANY OF NEW YORK**

v.

**W. J. LANDERS.**

**8 Div. 260.**

Supreme Court of Alabama.

March 13, 1969.

Joe Calvin, Decatur, for appellant.

Norman W. Harris and Julian Harris, Decatur, for appellee.

## PER CURIAM.

The final decree inviting this appeal was rendered in the Circuit Court of Morgan County, in equity, wherein appellee, W. J. Landers, filed his bill of complaint, in equity, alleging a justiciable controversy between him and appellant, Fidelity and Casualty Company of New York, a corporation, with respect to the coverage of an insurance policy which appellant issued to him. The declaratory decree on the issues was favorable to appellee.

The record contains three related assignments of error as follows:

"1. The trial Court erred in its final decree of December 29, 1966, in ordering, adjudging and decreeing as follows:

" '7. At the time of the loss in question the insured did not have the subject-cotton picker in his care, custody or control, nor was he exercising physical control over said property.'

"2. The trial Court erred in its final decree of December 29, 1966, in ordering, adjudging and decreeing as follows:

" '8. The loss in question was and is covered by the subject-insurance policy, and the defendant insurance company is bound under the terms of said policy to the insured, complainant.'

"3. The trial Court erred in its final decree of December 29, 1966, in ordering, adjudging and decreeing as follows:

" '9. The insured is entitled to an attorney's fee for the services of his attorney in representing him as a defendant in the Circuit Court of Lawrence County, Alabama in the proceedings growing out of the loss under consideration.' "

Appellant admits in its brief that the pivotal assignment is No. 1, *supra,* and that the merits of the other two depend upon the outcome of No. 1.

The policy which appellant issued to appellee was a Maufacturers' and Contractors' Schedule Liability policy by which appellant agreed: "To pay on behalf of the insured (appellee) all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss or use thereof, caused by accident and arising out of the hazards hereinafter defined."

The policy provided that it did not apply to "property in the care, custody or control of the insured [appellee] or property as to which the insured for any purpose is exercising physical control." If this exclusionary provision has application to the facts adduced at the trial of the cause, then the decree of the court should be reversed, otherwise it should be affirmed.

The pertinent facts as shown by the evidence were undisputed and may be briefly stated as follows: The respondent Letson (who did not appeal) was the owner of a cotton-picking machine which weighed seven tons, was thirteen feet high, eighty inches across, and eighteen to twenty feet long. He was using it for commercial picking in the field of another in a rural area when the axle broke loose from the frame. Some brackets which were holding the rear axle to the frame broke and came loose. The machine would not then move under its own power. Mr. Letson reported the condition of the axle to Morgan County Tractor Company, from which company he had purchased the picker. Mr. Holt Harris, identified in some capacity with the company, contacted appellee and then told Mr. Letson that appellee had a man who could go to the field and weld the broken bracket.

Appellee sent his employee, a Mr. Amerson, to do the welding. Amerson followed Mr. Letson, the owner, by motor vehicle

to the field where the machine was immobilized. Letson raised the basket so that Amerson could get to the bracket. Letson and his employee began loosening some bolts so that the axle could be jacked up and Amerson could do the welding. Amerson then decided he could weld the brackets without the axle being taken off and so informed Letson. Letson then sat down on the picker seat, looking the other way, while Amerson proceeded with the welding. The fire then started. Amerson then jumped off the rear of the cotton picker, where he had been sitting.

Letson testified that when they got to the cotton picker, following his lead in an automobile to the location, he showed Amerson what he wanted done, that he wanted the cotton picker in operating condition as soon as he could, and for Amerson to do whatever was necessary to get the cotton picker in operating condition; that Amerson was working on the cotton picker with his permission and at his request.

■ Attorneys for the parties to this appeal have submitted elaborate and informative briefs in support of their respective contentions. We have reviewed the citations and carefully considered the arguments. There is no decision of this court based on facts as here presented to which the exclusionary provision aforequoted has been applied. The several decisions by other states here cited do not have parallel facts as here under consideration. We think that specific reference to the cited cases and an effort here to review the facts and the holdings would be educational and informative of the problems and pronouncements appearing in such cases, but otherwise would be without help in solving the instant issues. Generally speaking, no rule of general application can be deduced from the cases, aside from the very obvious statement that the general principle that insurance policies, having been prepared by the insurer, must be construed most strongly against it and in favor of the insured, fully applies to the kind of exclusion clause here under consideration.

See Annotation, 62 A.L.R.2d, p. 1242 et seq. It is interesting to note, as was observed in 62 A.L.R.2d, *supra,* that there is authority to the effect that the exclusion clause is inherently ambiguous and, on the other hand, that the clause is clearly unambiguous.

No question is here presented involving the proprietary control of the picker. An overwhelming majority of cases support the view, either expressly or by implication, that the clause in the policy considered should be construed as referring to possessory handling of property as distinguished from proprietary control. See citations in 62 A.L.R.2d, p. 1245. The issue here is whether or not appellee was in possessory control of the picker. If in possessory control, appellee was not covered by the policy.

■ We are impressed with the pronouncement in Elcar Mobile Homes, Inc., v. D. K. Baxter, Inc., 66 N.J.Super. 478, 169 A.2d 509, quoted with approval in Michigan Mutual Liability Co. v. Mattox (Fla.App.), 173 So.2d 754, 757. We quote:

"We are of the opinion that what constitutes 'care, custody or control' or 'exercising physical control' depends not only upon whether the property is realty or personalty, but as well upon many other facts, such as the location, size, shape and other characteristics of the property, what the insured is doing to it and how, and the interest in and relation of the insured and others to it. Whether the property is realty or personalty, and the precise legal relationship of the insured and others to it, may be material in a given situation; but when they are, they are merely facts (more or less important, depending upon the circumstances) to be taken in conjunction with all the facts, in determining whether there is exclusion. * * *"

As we have observed, *supra,* the picker was bulky and heavy. It was located, when about to be welded, on a farm not under

the control or dominion of appellee or his appointed agent, Mr. Amerson. The machine was the property of Mr. Letson, who escorted the agent, Mr. Amerson, to the farm and there pointed out to him the cracked bracket that needed welding. The owner then raised the basket so that Mr. Amerson could get to the bracket. After obtaining access, Mr. Amerson then proceeded to do the welding, at which time the fire occurred.

Our view is that there was no element of bailment in the transaction. A distinction should be drawn here and in those cases decided by the courts where the automobile is brought to a garage and there turned over to the mechanic for repairs; also other circumstances involving bailment. As was observed in Gibson v. Glenn Falls Insurance Company, 241 S.C. 293, 128 S.E.2d 157, 160: "* * * Care, custody or control of [and we might add 'physical control'] property implies more than the mere right of access to it, which was all that the plaintiff had at the time of the accidental loss." Amerson was without authority or direction to move the picker. He could not do so, it was too heavy. He was there to weld the bracket and that was all he undertook to do. He was under no duty to protect it from the elements or hazards, other than that which was an incident to the welding.

It is unnecessary here to define the words used in the exclusionary clause. Given their ordinary meaning, we conclude that the welder in performing his duties was *in no sense* exercising *possessory* dominion or control of the picker, nor was he for any purpose exercising physical control. We think we would have to give the words a strained construction to include the welding operation here undertaken. The welder had only one specific duty, that was to weld the bracket, which operation did not require the welder to assume the care, custody or control of the machine, or the exercise of physical control. All he needed was access to the broken bracket. To obtain the access it was not necessary

for him to exercise any control, physical or otherwise, and which he did not do.

We affirm the decree of the trial court.

The foregoing opinion was prepared by BOWEN W. SIMMONS, Supernumerary Circuit Judge, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, MERRILL and HARWOOD, JJ., concur.