MAIN, Justice.
Mid-Continent Casualty Company (“Mid-Continent”) appeals from a judgment of the Mobile Circuit Court declaring that it has a duty to defend its named insured, Advantage Medical Electronics, LLC (“Advantage”), in a pending legal action ¿gainst Advantage. We affirm.
I. Facts and Procedural History
Advantage is a Mobile, Alabama, based company that services and sells MRI and CT scanners, types of medical-imaging devices. In December 2011, Advantage was hired by KEI Medical Imaging Services, LLC (“KEI”), to pick up and transport a used CT scanner machine that KEI had recently purchased from a leasing company. The CT scanner was located at a doctor’s office in Aiken, South Carolina. Advantage was hired to inspect the machine, to confirm that.it was operational, and then to de-install the machine and transport it to KEI’s facility in Texas.
On December 12, 2011, Advantage’s owner, William Dixon, and another worker, Michael.Crummey, traveled to South Carolina in a box van Advantage had rented for the purpose of transporting the CT scanner from South Carolina to Texas. After inspecting the CT scanner, Dixon and Crummey worked to de-install and disassemble the scanner and to prepare it to be moved.. The main.component of the CT scanner was a 4,500-pound section *241 known as the “gantiy.”[1] In order to move the gantry, Advantage used a specialized dolly system, which required that castor wheels be bolted to each corner of the gantry. The special dollies were provided to Advantage by KÉI, who had leased them for use in moving the CT scanner.
Once the CT scanner was disassembled, Dixon and Crummey moved the CT scanner, including the gantiy, outside the building so that it could be loaded into the box van. Because there was no loading dock at the location, Advantage planned to use a roll-back flat-top tow truck to load the gantry into the box van. Crummey telephoned local wrecker services in an effort to find someone to assist in loading the gantry into the box van. He spoke with Eddie Willing of Eddie’s Towing Company, who stated that he had had previous experience loading medical equipment. Willing agreed to move the gantry for $100.
When Willing arrived, he backed his tow truck up to the gantry and lowered the roll-back wrecker bed to the ground near the gantry. Willing then attached a winch cable to the gantry, engaged the winch, and pulled the gantry onto the back of the wrecker bed. Willing raised the wrecker bed, secured the gantry using tierdown chains, and drove the truck across the parking lot to the box van. Willing backed the tow truck up to the back of the box van and lowered the bed so it met the rear of the box-van. Willing released the winch, and, the gantry began to -roll toward the box van. As the front two wheels of the gantry entered the rear of the box van, Dixon, who was standing in the rear of the box van waiting to receive the gantry, heard a “big snap.” At that moment the gantry suddenly shifted to one side, struck the side of the box van, and fell off the side of the tow truck. The damage to the gantry was significant and rendered the CT scanner inoperable. Dixon and Willing both testified that a bolt holding part of the dolly system to the gantry had snapped, causing the gantry to shift and to fall from the tow truck. -
The loss was initially paid by KEI’s insurer,/Mid-Century Insurance Company. Mid-Century notified Advantage that it had determined that the damage to the CT scanner was the result of Advantage’s negligence, and it demanded that Advantage reimburse it for the amount paid on the claim — $180,000. Advantage notified its commercial' genéral-liability (“CGL”) ' insurer, Mid-Continent, of the claim, and Mid-Continent denied coverage for the loss.[2] Advantage’s policy.is a standard form CGL policy that requires Mid-Continent to “pay,.those sums that the insured becomes legally obligated to pay as damages because of ... ‘property damage’ ... caused by an ‘occurrence’ ” and to defend Advantage from any lawsuit seeking such damages.[3] In .its .letter denying Advan *242 tage’s claim, Mid-Continent cited several policy exclusions as the basis for denying coverage, namely, the contractual-liability exclusion; the “auto” exclusion; the exclusion for personal property in Advantage’s “care, custody, or control”; and the “your work” exclusion.
On March 20, 2013, Advantage commenced this action against Mid-Continent in the Mobile Circuit Court.[4] Advantage sought a judgment declaring that Mid-Continent owed a duty under the CGL policy Mid-Continent had issued to Advantage to defend Advantage in any action seeking damages for the loss of the CT scanner and to indemnify Advantage for any legal liability it incurred as a result of the loss.[5] Advantage also asserted a breach-of-contract claim against Mid-Continent.
On November 13, 2014, during the pen-dency of this action, Mid-Century, as KEI’s subrogee, sued Advantage in the Court of Common Pleas for Aiken County, South Carolina (“the South Carolina litigation”). The complaint filed in the South Carolina litigation set forth a single count of negligence against Advantage, alleging that the CT scanner was damaged as a result of Advantage’s failure to use reasonable care in moving the scanner. The complaint set forth the following factual allegations:
“6. During the moving process, the Scanner was mounted on four dollies, one on each corner.
“7. On December 12, 2011, [Advantage] began to load the Scanner into a box truck for transporting.
“8. In order to load the Scanner onto the box truck, a tilting roll-back truck was used as an inclined plane to raise the Scanner up to the level of the rear door of the box truck.
“9. While the Scanner was being loaded from the roll-back into the box truck, [Advantage] lost control of the Scanner and one of the dollies struck the side of the roll-back.
“10. When the subject dolly struck the side of the roll-back, the screw connecting the dolly to the Scanner broke, causing the Scanner to become unbalanced.
“11. In its unbalanced state, the Scanner fell off of the roll-back and struck the ground, causing severe damage to the Scanner_”
On July 12, 2014, Advantage filed a motion for a partial summary judgment in the Mobile Circuit-Court action, requesting a summary judgment in its favor on its claim that Mid-Continent owed a duty to defend Advantage in the South Carolina litigation. Mid-Continent filed a cross-motion for a summary judgment, arguing that, based on the various policy exclusions cited in its letter denying coverage, it had no duty to defend or to indemnify Advantage.[6] In *243 support of their respective summary-judgment motions, the parties submitted narrative statements of undisputed facts and evidentiary materials, including, once filed, the complaint in the South Carolina litigation and the depositions of Dixon, KEI’s corporate representative, and Willing.
On February 11, 2015, the circuit court granted Advantage’s motion for a summary judgment and denied Mid-Continent’s motion. The circuit court held that Mid-Continent owed Advantage a duty to defend it in the South Carolina litigation under the CGL policy. On April 13, 2015, the circuit court entered its summary-judgment order and certified it under Rule 54(b), Ala. R. Civ. P., as a final judgment.[7] Mid-Continent filed this appeal.
II. Standard of Review
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the non-movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine'issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to b'e proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).
III. Analysis
An insurance company has two general duties under a policy of insurance: a duty to defend and a duty to indemnify. The duty to defend is broader than the duty to indemnify.- This appeal concerns only Mid-Continent’s alleged duty to defend Advantage in the South Carolina litigation.
“ ‘It is well settled “that [an] insurer’s duty to defend is more extensive than its duty to [indemnify].” United States Fid. & Guar. Co. v. Armstrong, 479 So.2d 1164, 1168 (Ala.1985) (citations omitted). Whether an insurance compar ny owes its insured a duty to provide a defense in proceedings instituted against the insured is determined primarily by the allegations contained in the complaint. Id. at 1168. If the allegations of the injured party’s complaint show an accident or an occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured. Ladner & Co. v. Southern Guar. Ins. Co., 347 So.2d 100, 102 (Ala.1977)(citing Goldberg *244 v. Lumber Mut. Cas. Ins. Co., 297 N.Y. 148, 77 N.E.2d 131 (1948)). However, “[t]his Court ... has rejected the argument that the insurer’s obligation to defend must be determined solely from the facts alleged in the complaint in the action against the insured.” Ladner, 347 So.2d at 103. In Pacific Indemnity Co. v. Run-A-Ford Co., 276 Ala. 311, 161 So.2d 789 (1964), this Court explained:-
“‘“We are of [the] opinion that in deciding, whether a complaint alleges such injury, the court is not limited to the bare allegations of the complaint in the action against [the] insured but may look to facts which may be proved by admissible evidence_”
“ ‘276 Ala. at 318, 161 So.2d at 795; see Ladner, 347 So.2d at 103 (quoting this language). “[I]f there is any uncertainty as to whether the complaint alleges facts that would invoke the duty to defend, the insurer must investigate the facts surrounding the incident that gave rise to the complaint in ¡order to determine whether it has a duty to defend the insured.” Blackburn v. Fidelity & Deposit Co. of Maryland, 667 So.2d 661, 668 (Ala.1995)(citing United States Fid. & Guar. Co. v. Armstrong, 479 So.2d 1164 (Ala.1985)) (other citations omitted).’ ”
Hartford Cas. Ins. Co. v. Merchants & Farmers Bank, 928 So.2d 1006, 1009-10 (Ala.2005) (quoting Acceptance Ins. Co. v. Brown, 832 So.2d 1, 14 (Ala.2001)).
In the present appeal, it is undisputed that Advantage, the named insured under the Mid-Continent CGL policy, is a defendant in a “ ‘suit’ seeking damages for .;. ‘property damage’ ” caused by an “occurrence.” The question is whether the incident falls within one or more of the coverage exclusions in the policy so as to relieve Mid-Continent of its duty to defend Advantage.
Policy exclusions are to be narrowly interpreted, and, when an ambiguity exists in the language of an exclusion, “ ‘ “the exclusion will be construed so as to limit the exclusion to the narrowest application reasonable under the wording.”’” Porterfield v. Audubon Indem. Co., 856 So.2d 789, 806 (Ala.2002) (quoting Carpet Installation & Supplies of Glenco v. Alfa Mut. Ins. Co., 628 So.2d 560, 562 (Ala.1993), quoting in turn St. Paul Mercury Ins. Co. v. Chilton-Shelby Mental Health Ctr., 595 So.2d 1375, 1377 (Ala.1992)). See also American States Ins. Co. v. Martin, 662 So.2d 245, 247 (Ala.1995) (“Exclusions are to be interpreted as narrowly as possible, so as to provide maximum coverage for the insured, and are to be construed most strongly against the insurance company that drafted and issued the policy.”). Here, Mid-Continent contends that four exclusions in the CGL policy separately apply to relieve it of its duty to defend Advantage in the South Carolina litigation: The “auto” exclusion; the “care, custody, or control” exclusion; the “your work” exclusion; and the contractual-liability exclusion. Mid-Continent also relies on the “no-action” clause in the policy. We discuss each in turn.
A. The “auto” exclusion
First, Mid-Continent contends that cóv-erage is excluded under the “auto” exclusion in the policy, which provides, in pertinent part:
“This insurance does not apply to:
[[Image here]]
“‘Bodily injury’ or ‘property damage’ arising out of the ownership, maintenance, use or entrustment to others of any ... ‘auto’ ... owned or operated by or rented or loaned to any insured. Use *245 includes operation and ‘loading or unloading.’ ”
The purpose of the auto exclusion in the CGL policy is to proscribe coverage for liability that should more properly fall under an automobile-liability policy. In this regard, loading and unloading of an automobile or other vehicle are generally considered “use” of the “auto,” with one important exception. The policy ’ defines “loading or unloading” as follows:
“ ‘Loading or unloading1 means the handling of property:
“a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or ‘auto’;
“b. While it is in or on an aircraft, watercraft or ‘auto’; or
“c. While it is being moved from an aircraft, watercraft or ‘auto’ to the place where it is finally delivered;
“but ‘hading or unloading’ does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the ... ‘auto.’ ”
(Emphasis added.)
Mid-Continent argues that because the accident occurred while the gantry was being loaded into the box van (or unloaded from the tow truck), the property damage arose out of the “use” of an “auto.” Thus, it contends, the auto exclusion bars coverage under the CGL policy.
In the present case the CT scanner was damaged as the gantry was being loaded into a box van by means of a tow truck. Although the tow truck is an “auto” as defined by the policy,[8] it is undisputed that the tow truck was not “owned, or operated by; or rented or loaned to” Advantage, Thus, the unloading of the tow truck provides no basis for the application of the auto exclusion.
The box van, however, is an “auto” “operated by or rented” to- Advantage. The policy provides that the “use” of an “auto” includes “loading or: unloading.” Here, there is no question that the CT scanner was being “loaded” into the box van, as that word is commonly used. Significantly, however, the definition in the policy of “loading and unloading” contains an exception: “ ‘loading or unloading1 does not include the movement of property by means of a mechanical -device, other than a hand truck, that is not attached to the ... ‘auto.’ ” Here, there is no dispute that the gantry portion of the CT scanner was being lowered into the-box van by a tow truck — a mechanical device. -Thus, this incident falls within the exception to the definition in the policy of “loading and unloading.” The CT scanner was not being “loaded or unloaded” as that term is defined by the CGL policy. Therefore, the accident did not arise out the “use” of the box van, and the auto exclusion is inapplicable. See Elk Run Coal Co. v. Canopius U.S. Ins., Inc., 235 W.Va. 513, 775 S.E.2d 65 (2015) (holding that a front-end loader being used to load coal onto a truck constituted a “mechanical device” under a CGL policy and that, therefore, the auto exclusion was not applicable); Continental Ins. Co. v. American Motorist Ins. Co., 247 Ga.App. 331, 542 S.E.2d 607 (2000) (determining that the auto exclusion in a CGL policy did. not apply when the accident occurred while the insured’s vehicle was *246 being unloaded by means of a “pallet jack”).
B. The care, custody, or control exclusion
Next, Mid-Continent contends that it has no duty to defend Advantage because, it says, coverage is excluded under the “care, custody, or control” exclusion, which provides:
“This insurance does not apply to:
[[Image here]]
“j. Damage To Property “ ‘Property damage’ to:
[[Image here]]
“(4) Personal property in the care, custody or control of the insured — ”
The general intent of this exclusion is to avoid coverage under a CGL policy that should be covered separately under property insurance. See 7A John Alan Appleman, Insurance Law & Practice § 4493.03 (1979). This Court interpreted a “care, custody or control” exclusion in the seminal case Fidelity & Casualty Co. of New York v. Landers, 283 Ala. 697, 220 So.2d 884 (1969). In that case, we held that, in order to fall within the exclusion, the insured must be exercising possessory control of the property:
“An overwhelming majority of cases support the view, either expressly or by implication, that the [care, custody or control exclusion] clause in the policy considered should be construed as referring to possessory handling of property as distinguished from proprietary control. See citations in 62 A.L.R.2d, p. 1245. The issue here is whether or not [the insured] was in possessory control of the [property]. If in possessory control, [the insured] was not covered by the policy.”
283 Ala. at 699, 220 So.2d at 887. Further, “[i]t is the exclusive possession of the property at the time damage occurs that is decisive of whether the exclusion is operative.” Insurance Law & Practice § 4493.03. Finally, we have stated that whether the care, custody, or control exclusion applies must be determined on a case-by-case basis:
‘“We are of the opinion that what constitutes “care, custody or control” or “exercising physical control” depends not only upon whether the property is realty or personalty, but as well upon many other facts, such as the location, size, shape and other characteristics of the property, what the insured is doing to it and how, and the interest in and relation of the insured and others to it. Whether the property is realty or personalty, and the precise legal relationship of the insured and others to it, may be material in a given situation; but when they are, they are merely facts (more or less important, depending upon the circumstances) to be taken in conjunction with all the facts, in determining whether there is exclusion....’”
283 Ala. at 699, 220 So.2d at 887 (quoting Michigan Mut. Liab. Co. v. Mattox, 173 So.2d 754, 757 (Fla.Dist.Ct.App.1965), quoting in turn Elcar Mobile Homes, Inc. v. D.K. Baxter, Inc., 66 N.J.Super. 478, 169 A.2d 509 (1961)).
In the present case Mid-Continent urges us to look no further than the complaint in the South Carolina litigation to confirm the application of the care, custody, or control exclusion. Mid-Continent points to the allegations of the complaint asserting that Advantage “lost control” and failed to “maintain proper control” of the CT scanner. Although those allegations certainly imply that Advantage was in some type of control over the scanner, those allegations are not dispositive as to the application of the “care, custody, or *247 control” exclusion for at least two reasons. First, the complaint does not allege that Advantage exercised the type of exclusive possessory control required to make the exclusion applicable. Second, we are not limited to the bare allegations of the underlying complaint in determining whether an insurer has a duty to. defend. See Hartford, 928 So.2d at 1010. An insurer should not be able to evade its obligation to defend by ignoring the facts and relying on incorrect or incomplete allegations in the complaint. Thus, contrary to Mid-Continent’s arguments, our analysis must consider the undisputed evidence of Willing’s involvement in the incident.
Although not set out in the factual allegations of the complaint in the South Carolina litigation, it is undisputed that the accident occurred while Willing’s tow truck was lowering the gantry by means of a winch into Advantage’s box van. Willing was hired, at least in part, because he had experience loading and unloading medical equipment like the CT scanner. Upon his arrival, Willing lowered the wrecker bed to the ground near the gantry, attached his winch cable, and then winched the gantry onto the wrecker bed. He then raised the bed and secured the gantry with tie-down chains. He next drove across the parking lot, backed the. tow truck up to the box van, and lowered the wrecker bed until it was aligned with the back of the box van. Willing then removed the tie downs and, using a control panel on his tow truck, began to release the winch cable. The gantry fell from the wrecker as Willing was lowering it. into the box van. Thus, at the time of the accident, Willing, who was lowering the gantry from his tow truck by means of a winch he was operating, - was exercising- some control over the gantry.
Under the peculiar facts of this case, we cannot say that the circuit court erred in finding that the care, custody, or control exclusion, did-not preclude Mid-Continent’s duty to defend. • Mid-Continent has failed to cite any authority tending .to establish that, under the facts of this case, Advantage was in exclusive possessory control of the CT scanner at the time of the accident. Our research has revealed several analogous cases in which courts have found the party in Willing’s position to be. the party exercising care, custody,. or control over the equipment, being loaded or unloaded. See Appicelli Sales & Serv., Inc. v. Citizens Mut. Ins. Co., 40 Mich.App. 287, 199 N.W.2d 242 (1972) (holding that the company using a wrecker winch to unload a cherry picker from a flatbed trailer had care, custody, or control of cherry picker during unloading process, when cherry picker was damaged); Torrington Co. v. Aetna Cas. & Surety Co., 264 S.C. 636, 216 S.E.2d 547 (1975) (holding that, heavy equipment that was dropped during unloading was under care, custody, or control of company operating the crane used to unload the equipment). Accordingly, under the facts and arguments before us, we do not find that the circuit court erred in failing to apply the “care, custody, or control” exclusion.
C. The “your work” exclusion
Next, Mid-Continent asserts that it has no duty to defend Advantage in the South Carolina litigation because, it says, coverage is excluded under the “your work” exclusion. That exclusion — exclusion j(6) under the policy — precludes coverage for:
“ ‘Property damage’ to:
[[Image here]]
“(6) That particular part of any property that must be restored, repaired or replaced because ‘your work’ was incorrectly performed on it.”
The “your work” exclusion is one of the common business-risk exclusions found in liability-insurance policies. The purpose of the “your work” exclusion is to prevent *248 coverage for the insured’s own faulty workmanship, a normal risk associated with operating a business. See 9A Lee R. Russ et al., Couch on Insurance § 129:17. The exclusion is intended to prevent liability, insurance from becoming a performance bond for the insured’s work.
■ Here, Mid-Continent argues that because Advantage was engaged to transport the CT scanner, its attempt to load the gantry into the box van was a part of its “work.” The policy defines “your work,” in pertinent part, as “[w]ork or operations performed by you or on your behalf.” Although the gantry was being loaded by Willing, it' is undisputed that this work was being done on Advantage’s behalf. Thus, we agree with Mid-Continent that the loading of the gantry' qualified as “your work” under the policy.'
Advantage, however, argues that the evidence before the circuit court indicated that Advantage’s work was not “incorrectly performed” on the CT scanner. ’ To the contrary, Advantage argues, the accident was the result of the sudden and unexpected failure of ’a bolt that attached one of the dollies to the gantry. Advantage therefore contends that, notwithstanding the allegations of the complaint in the South Carolina litigation, the accident in this ease did not occur because Advantage was incorrectly performing its work on the CT scanner, but because a bolt supplied by a third party unexpectedly failed. Thus, it contends, the exclusion should not apply.
The “your work” exclusion applies to property that is damaged because the insured’s work “was incorrectly 'performed on it.” (Emphasis added.) We confess that, under the facts of this case, there is some ambiguity in the- phrase “work ... incorrectly performed on it” and whether the transportation of an item constitutes work “on it.” There is some authority for the proposition that it does not. In Essex Insurance Co. v. Inland Marine Sales, LLC, 387 F.Supp.2d 978 (W.D.Ark.2005), the insured’s agent was removing a houseboat from the water with a trailer so that the engine of the boat could be inspected. While it was being moved,- the boat fell from the trailer and was damaged. In that case, the court concluded that the “your work” exclusion did not apply because the damage to the houseboat occurred “while [the insured] was moving the boat rather than actually repairing it or servicing its parts,” 387 F.Supp.2d at 983. Furthermore, in Cincinnati Insurance Co. v. Federal Insurance Co., 166 F.Supp.2d 1172 (E.D.Mich.2001), the court held that the exclusion did not apply when the evidence showed that the machine part fell, not because of the insured’s incorrectly performing, work on the machine, but because a brake mistakenly became disengaged.
In response to Advantage’s argument, Mid-Continent cites no authority to suggest that an accident occurring during the movement of property constitutes work “incorrectly performed on” the property for the purpose^of the j(6) exclusion. Instead, Mid-Continent merely argues that there remain questions of fact as to the cause of the accident and challenges the admissibility of the extrinsic testimony concerning the sudden shearing of the dolly bolt. We fail to understand Mid-Continent’s contentions in this regard, particularly in light of Mid-Continent’s own “statement of undisputed facts” submitted to the circuit court, which stated that “the two hex bolts on one of the dollies sheared off making the gantry unbalanced -... [and b]ecause of its instability, the CT scanner fell off the rollback truck.” Nor did Mid-Continent argue in its summary-judgment filings that there were any material questions of fact precluding summary judgment as to this issue. .
Further, we note that-exclusion j(6) does not exclude coverage for all property dam *249 age caused by an insured’s faulty workmanship. Rather, the meaning of exclusion j(6) is plain that property damage is excluded from coverage under that provision- only as to the “particular part[s]” of the property that were themselves the subject of the defective work. In interpreting this exclusion,-the United States Court of Appeals for the Fifth Circuit has stated:
“[Ejxclusion j(6) bars coverage only for property damage to parts of a property that were themselves the subject of defective work by the insured; the exclusion does not bar coverage for damage to parts of a property that were; the subject of only nondefective work by the insured and were damaged as a result of defective work by the insured on other parts of the property.”
Mid-Continent Cas. Co. v. JHP Dev., Inc., 557 F.3d 207, 215 (5th Cir.2009). this statement is consistent with our prior interpretations of similar faulty-workmanship exclusions. See, e.g., Berry v. South Carolina Ins. Co., 495 So.2d 511 (Ala.1985); United States Fid. & Guar. Co. v. Bonitz Insulation Co. of Alabama, 424 So.2d 569, 573 (Ala.1982).
Here, we are faced with undisputed evidence that only one constituent part of the CT scanner — the gantry — was being moved at the time of the accident. The allegations of the complaint in the South Carolina litigation, however, allege physical damage to the entire CT scanner. Thus, even if mere movement of the property constitutes work on the CT scanner, to the extent parts of the scanner other than the gantry were damaged, exclusion j(6) would not exclude coverage as to those other parts, and Mid-Continent would be required to defend.
Based on the‘arguments and facts before us on appeal, and the requirement that exclusionary provisions be narrowly interpreted, we cannot say the circuit court erred in refusing to find that exclusion j(6) precluded Mid-Continent’s duty to defend Advantage in the South Carolina litigation. •
D. Contractual-liability exclusion
Next, Mid-Continent contends that coverage is excluded under the contractual-liability exclusion. That exclusion provides, in part: “This insurance does not apply to . ‘Bodily injury* or ‘property damage’ for which the insured is obligated to pay damages by reason of the assumption of liability, in a ^contract or agreement.” Mid-Continent contends, that because Advantage was retained by KEI to move the scanner, the accident arose out of a contractual relationship. Thus, it argues, the contractual-liability exclusion applies. The complaint in the South Carolina litigation, however, makes no claim that any contraetüál obligations' were breached or that Advantage is liable based on a contractual assumption of liability. Rather,, the complaint asserts a single count of negligence, in which it contends that Advantage failed to exercise- reasonable care in transporting the CT scanner. Accordingly, the contractual-liability exclusion does not apply. See Townsend Ford, Inc. v. Auto-Owners Ins. Co., 656 So.2d 360, 364 (Ala.1995) (noting that the contractual-liability exclusion relieves an insurer from defending claims against its insured involving indemnity contract liability); United States Fid. & Guar. Co. v. National Tank & Mach. Works, Inc., 402 So.2d 925, 927 (Ala.1981) (“Those allegations do not depend upon any ‘liability assumed by the Insured under any contract’ but Upon an alleged breach of duty implied by law; hence [the contractual-liability] exclusion does not apply.”).
E. No-action clause
Finally, Mid-Continent- argues that the trial court erred in entering a *250 summary judgment in favor of Advantage because, it argues, Advantage’s declaratory-judgment action is barred by the “no-action” clause in the policy until a final judgment has been entered against Advantage. The no-action clause provides:
“3. Legal Action Against Us
“No person or organization has a right under this Coverage Part:
“a. To join us as a party or otherwise bring us into a ‘suit’ asking for damages from an insured; or
“b. To sue us on this Coverage Part unless all of its terms have been fully complied with.
“A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance.... ”
This provision is intended to prevent direct actions against an insurer for liability owed by the insured until there is a final judgment or settlement against the insured. Mid-Continent argues that Advantage must first suffer a final judgment in the South Carolina litigation before it can obtain a judgment declaring that Mid-Continent has a duty to defend in the South Carolina litigation. We find this construction untenable and simply not supported by the policy language or the authority cited on appeal. See Eureka Fed. Sav. & Loan Ass’n v. American Cas. Co. of Reading, Pa., 873 F.2d 229, 232-33 (9th Cir.1989) (no-action clause does not bar insured’s declaratory-judgment action).
IV. Conclusion
This case concerns Mid-Continent’s duty to defend Advantage in the South Carolina litigation. Based upon both the allegations in the complaint and the undisputed facts, the Mobile Circuit Court concluded that the policy exclusions did not allow Mid-Continent to evade its obligation to provide a defense under the CGL policy it had issued to Advantage, and it entered a final judgment in favor of Advantage. For the reasons set forth above, the judgment of the circuit court is affirmed.
AFFIRMED.
MOORE, C.J., and STUART, BOLIN, PARKER, WISE, and BRYAN, JJ., concur.
MURDOCK and SHAW, JJ., dissent.

. The CT scanner in this case consisted of several components, including the gantiy, a patient couch, a power conditioner, a host-computer console, an image-reconstruction computer console, and a contrast injector. The gantry is the central component of the CT scanner, housing X-ray and data-collection equipment,

. Mid-Continent also denied coverage for the loss under a commercial automobile policy it had issued to Advantage. That policy, however, is not at issue in this appeal.

.The basic insuring agreement of the CGL policy provides in pertinent part:
“We will pay those,sums that the insured becomes legally obligated to . pay as damages because of ‘bodily injury’ or ‘property damage’ to which this insurance applies. We will have the right and duty to defend the insured against any ‘suit’ seeking those damages. However, we will have no duty to defend the insured against any ‘suit’ seeking damages for ‘bbdily injury’ or ‘property damage’ to which this insurance does not apply....”

. Mid-Continent is the only- defendant to the action. The action was removed to the United States District Court for the Southern District of Alabama on February 5, 2014. The district court remanded the case to the Mobile Circuit Court on May 5, 2014.

. Advantage's action also seeks a declaration that Mid-Continent owes a duty to defend and to indemnify Advantage under the commercial automobile policy issued to Advantage. As noted supra, note 2, that policy is not at issue in this appeal.

.The summary-judgment motions were filed before the commencement of the South Carolina litigation. Thus, Mid-Continent initially asserted that Advantage's claims were premature and not ripe for adjudication. Following the commencement of the South Carolina litigation, Mid-Continent amended its summary-judgment motion to argue that the facts asserted in the complaint in the South Carolina litigation did not allege a covered occurrence.

. We agree with those decisions from other jurisdictions that find a ruling as to a duty to defend under an insurance policy is appropriate for Rule 54(b) certification, despite pending claims concerning the duly to indemnify under the same policy. See Still up in the Air? Appealability of Decisions on the Duty to Defend, 26 No. 8 Ins. Litig. Rep 281 (May 14, 2004) (collecting state and federal court decisions).

. The policy defines “auto” as:
"a. A land motor vehicle, trailer or semitrailer designed for travel on public roads) including any attached machinery or equipment; or
“b, Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.”